**AEGON USA, INC.**

**PENSION PLAN**

**As Amended and Restated Effective as of January 1, 2007**

CH02/ 22456036.10



## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARTICLE I    DEFINITIONS................................................................................ 2
1.1    "Accrued Benefit" ................................................................ 2
1.2    "Active Participant" ............................................................. 2
1.3    "Actuarial Equivalent" ........................................................ 2
1.4    "Actuarial Equivalent Value" .............................................. 2
1.5    "Actuary" ............................................................................ 3
1.6    "Adjustment Factor" ........................................................... 3
1.7    "Affiliated Employer"......................................................... 3
1.8    "Attained Age".................................................................... 3
1.9    "Authorized Leave of Absence" .......................................... 3
1.10   "Beneficiary" ...................................................................... 3
1.11   "Benefit Commencement Date" ........................................... 3
1.12   "Board or Board of Directors".............................................. 3
1.13   "Break in Service" .............................................................. 4
1.14   "Code".................................................................................. 4
1.15   "Company" .......................................................................... 4
1.16   "Computation Period"......................................................... 4
1.17   "Contingent Beneficiary"..................................................... 4
1.18   "Covered Compensation" .................................................... 4
1.19   "Credited Service" .............................................................. 4
1.20   "Death Benefit".................................................................... 4
1.21   "Deferred Vested Benefit" ................................................... 5
1.22   "Disability Retirement Date" ............................................... 5
1.23   "Disabled Participant" ......................................................... 5
1.24   "Early Retirement Benefit".................................................. 5
1.25   "Early Retirement Date" ...................................................... 5
1.26   "Early Retirement Service".................................................. 5
1.27   "Earnings"............................................................................ 5
1.28   "Eligibility Service" ............................................................ 7
1.29   "Eligible Employee" ........................................................... 7
1.30   "Employee".......................................................................... 8
1.31   "Employer" .......................................................................... 8
1.32   "Employment Commencement Date".................................... 8
1.33   "ERISA" .............................................................................. 8
1.34   "Final Average Earnings"..................................................... 8
1.35   "Highly Compensated Employee" ....................................... 9
1.36   "Hour of Service" ............................................................... 9
1.37   "Joint Annuitant" ................................................................ 9
1.38   "Key Employee" .................................................................. 9
1.39   "Leased Employee" ............................................................. 9
1.40   "Life Annuity"..................................................................... 9
1.41   "Monthly Retirement Income" ............................................. 9
1.42   "Named Fiduciary"............................................................... 9

CH02/ 22456036.10

1.43  "Normal Retirement Date" ................................................................ 9
1.44  "Participant" ...................................................................................... 9
1.45  "Participation" ................................................................................... 9
1.46  "Participation Date" .......................................................................... 9
1.47  "Pension Committee" ........................................................................ 9
1.48  "Plan" ................................................................................................. 9
1.49  "Plan Year" ...................................................................................... 10
1.50  "Postponed Retirement Benefit" ................................................... 10
1.51  "Postponed Retirement Date" ........................................................ 10
1.52  "Predecessor Employer" .................................................................. 10
1.53  "Qualified Dependent" ..................................................................... 10
1.54  "Qualified Military Service" ........................................................... 10
1.55  "Spouse" ........................................................................................... 10
1.56  "Termination" .................................................................................. 10
1.57  "Termination Date" .......................................................................... 10
1.58  "Total and Permanent Disability or Totally and Permanently Disabled" ............ 10
1.59  "Trust Agreement" ........................................................................... 11
1.60  "Trust Fund" .................................................................................... 11
1.61  "Vesting Service" ............................................................................. 11

ARTICLE II  PARTICIPATION AND TRANSFERS ................................................ 11
2.1   Participation ..................................................................................... 11
2.2   Termination of Participation ........................................................... 11
2.3   Re-employment ................................................................................ 11
2.4   Benefit Offset ................................................................................... 12
2.5   Transfer to an Employer .................................................................. 12
2.6   Transfer to an Affiliated Employer that is not an Employer .............. 12
2.7   Transfer from an Affiliated Employer that is not an Employer ............ 12
2.8   Resumption of Full Participation .................................................... 13
2.9   Change from Eligible Employee to Employee while Remaining Employed by the Same Employer ........................ 13
2.10  Plan Binding ..................................................................................... 13

ARTICLE III  SERVICE ................................................................................................ 13
3.1   Eligibility Service ............................................................................. 13
3.2   Credited Service ............................................................................... 14
3.3   Vesting Service ................................................................................. 14
3.4   Early Retirement Service ................................................................ 14
3.5   Break in Service ............................................................................... 14
3.6   Hour of Service ................................................................................. 15

ARTICLE IV  SUSPENSION OF BENEFITS ............................................................. 17
4.1   Suspension of Benefits—Postponed Retirement ........................... 17
4.2   Suspension of Benefits—Rehires .................................................... 17
4.3   Suspension of Benefit Notice ........................................................... 17
4.4   Section 203(a)(3)(B) Service ........................................................... 17

| | | |
|---|---|---|
| 4.5 | Recommencement of Benefits | 18 |
| 4.6 | Adjustment for Suspension of Benefits | 18 |

**ARTICLE V   REQUIREMENTS FOR MONTHLY RETIREMENT INCOME** ........ 18
| | | |
|---|---|---|
| 5.1 | General | 18 |
| 5.2 | Normal Retirement | 18 |
| 5.3 | Postponed Retirement | 19 |
| 5.4 | Early Retirement | 19 |
| 5.5 | Disability Retirement | 20 |
| 5.6 | Requirements Concerning Distributions | 20 |
| 5.7 | Direct Rollovers | 25 |

**ARTICLE VI   OTHER BENEFITS AT TERMINATION OF EMPLOYMENT OR DEATH** ......... 26
| | | |
|---|---|---|
| 6.1 | Deferred Vested Benefits | 26 |
| 6.2 | Death Benefits - Qualified Pre-retirement Survivor's Annuity or Actuarial Equivalent Value | 28 |
| 6.3 | Death of Retired or Disabled Participant | 31 |
| 6.4 | Reliance upon Affidavits | 31 |
| 6.5 | Involuntary Lump Sum Distributions | 31 |
| 6.6 | Benefit Commencement Limitations | 32 |
| 6.7 | Required Distribution Periods | 32 |
| 6.8 | Required Distributions Upon Death | 32 |
| 6.9 | Special Rule for Participants and Alternate Payees under QDROs | 33 |

**ARTICLE VII   AMOUNT OF ACCRUED BENEFIT** ......... 33
| | | |
|---|---|---|
| 7.1 | Accrued Benefit | 33 |
| 7.2 | Accrued Benefit for Code Section 401(a)(17) Participants | 34 |

**ARTICLE VIII   FORMS OF MONTHLY RETIREMENT INCOME** ......... 34
| | | |
|---|---|---|
| 8.1 | General | 34 |
| 8.2 | Normal Forms of Monthly Retirement Income | 34 |
| 8.3 | Right to Elect | 35 |
| 8.4 | Election of Forms | 35 |
| 8.5 | Optional Forms of Payment of Monthly Retirement Income | 36 |
| 8.6 | Beneficiary | 38 |

**ARTICLE IX   PLAN ADMINISTRATION** ......... 39
| | | |
|---|---|---|
| 9.1 | Plan Administrator | 39 |
| 9.2 | Powers and Duties | 39 |
| 9.3 | Actions by Committee | 40 |
| 9.4 | Interested Committee Members | 40 |
| 9.5 | Indemnification | 40 |
| 9.6 | Conclusiveness of Action | 40 |
| 9.7 | Payment of Expenses | 41 |
| 9.8 | Claims Procedure | 41 |

CH02/ 22456036.10

    9.9      Restriction on Venue........................................................................ 42

ARTICLE X  TRUST FUND AND CONTRIBUTIONS ........................................ 42
    10.1    Employer Contributions.................................................................. 42
    10.2    Non-Diversion of the Trust Fund................................................... 42
    10.3    Benefits .......................................................................................... 43
    10.4    Participants' Rights ........................................................................ 43
    10.5    Spendthrift Clause.......................................................................... 43
    10.6    Return of Contributions ................................................................. 43

ARTICLE XI  AMENDMENT, TERMINATION AND MERGER OF THE PLAN ................ 43
    11.1    Amendment of Plan ....................................................................... 44
    11.2    Limitations on Right to Amend ..................................................... 44
    11.3    Amendment of Vesting Schedule .................................................. 44
    11.4    Termination.................................................................................... 44
    11.5    Apportionment of Trust Fund ........................................................ 44
    11.6    Allocation of Trust Fund................................................................ 45
    11.7    Distribution of Trust Fund ............................................................. 45
    11.8    Restrictions on Distributions.......................................................... 45
    11.9    Nonforfeitability ............................................................................ 45
    11.10  Benefits on Merger or Consolidation............................................. 46

ARTICLE XII  ENTRY AND WITHDRAWAL OF AN EMPLOYER ..................................... 46
    12.1    Entry of an Employer...................................................................... 46
    12.2    Withdrawal of an Employer ........................................................... 46

ARTICLE XIII  TOP-HEAVY PLAN PROVISIONS ............................................ 46
    13.1    Generally........................................................................................ 46
    13.2    Vesting ........................................................................................... 46
    13.3    Minimum Benefit........................................................................... 46
    13.4    Top Heavy Compensation.............................................................. 47
    13.5    Testing Year................................................................................... 47
    13.6    Full Compensation......................................................................... 47
    13.7    Top Heavy Service......................................................................... 47
    13.8    Top Heavy Plan.............................................................................. 47
    13.9    Key Employee................................................................................ 48
    13.10  Required Aggregation Group......................................................... 49
    13.11  Permissive Aggregation Group...................................................... 49
    13.12  Modification of Top-Heavy Provisions ......................................... 49

ARTICLE XIV  STATUTORY BENEFIT LIMITATIONS.................................... 50
    14.1    Code Section 415 Limits................................................................ 50
    14.2    Special Limit on Twenty-five (25) Highest-Paid Employees........ 50
    14.3    Exceptions to Special Limit ........................................................... 50
    14.4    Plan Termination Limit.................................................................. 50
    14.5    Highly Compensated Employee .................................................... 50

- iv -

ARTICLE XV MISCELLANEOUS ................................................................. 52

15.1    Limitation on Distributions ............................................................ 52
15.2    Limitation on Reversion of Contributions ........................................ 52
15.3    Voluntary Plan .......................................................................... 52
15.4    Inability to Receive Benefits ......................................................... 52
15.5    Missing Persons, No Beneficiaries, and Closed Estates ..................... 53
15.6    Limitation of Third Party Rights .................................................... 53
15.7    Severability ............................................................................. 53
15.8    One Plan ................................................................................. 54
15.9    Use and Form of Words ............................................................... 54
15.10   Headings ................................................................................. 54
15.11   Governing Law .......................................................................... 54
15.12   Named Fiduciaries ..................................................................... 54
15.13   Allocation of Duties of Fiduciaries ................................................. 54
15.14   Use of Electronic Media .............................................................. 54

SCHEDULE A ....................................................................................... 1
SCHEDULE B ....................................................................................... 1

**AEGON USA, INC.**

**PENSION PLAN**

**(As Amended and Restated Effective January 1, 2007)**


**<u>INTRODUCTION</u>**

AEGON USA, Inc., an Iowa corporation with principal offices located in Cedar Rapids, Iowa (the "Company"), adopted the AEGON USA, Inc. Pension Plan, effective January 1, 1989 (the "Plan"). The Plan is hereby amended and restated effective January 1, 2007 to incorporate prior amendments and to reflect recent changes in applicable law.

It is intended that this Plan, together with the Trust Agreement, continue to meet all applicable requirements of the Employee Retirement Income Security Act of 1974, as amended, and the Internal Revenue Code of 1986, as amended, and the Plan shall be interpreted, wherever possible, to comply with the terms of ERISA and the tax qualification requirements of the Internal Revenue Code and all regulations and rulings issued thereunder.

Except as otherwise required by the Code and ERISA and as otherwise provided in this document or any amendment thereof, the provisions of this Plan shall apply to Employees of the Employer who complete one hour of service on or after January 1, 2007. The rights of former Employees who terminated employment prior to January 1, 2007 shall be governed by the terms of the Plan as in effect on the Employee's Termination Date.

# ARTICLE I
## DEFINITIONS

The words and phrases defined in this Article I when used in this Plan with an initial capital letter shall have the meanings specified in this Article I, unless a different meaning is clearly required by the context. Words in the singular shall be read and construed as though used in the plural in all cases where they would so apply.

1.1    "Accrued Benefit" shall mean the Monthly Retirement Income, payable as a Life Annuity, commencing at Normal Retirement Date or Postponed Retirement Date, as shall be considered accrued at any time for a Participant, determined in accordance with Article VII.

1.2    "Active Participant" shall mean a Participant still actively employed as an Eligible Employee.

1.3    "Actuarial Equivalent" shall mean a benefit or amount having a value equal to the Actuarial Equivalent Value of an Accrued Benefit.

1.4    "Actuarial Equivalent Value" shall mean a benefit in a form other than the form of a Life Annuity, as defined in Section 1.40 and Article VIII, which, as of the date of reference, has the same single-sum dollar value as the benefit in the form of a Life Annuity, with such value to be computed on the basis of the applicable mortality table and applicable interest rate provided below.

For purposes of determining the Actuarial Equivalent Value of any lump sum payment, the Applicable Interest Rate and Applicable Mortality Table shall be as follows:

(i)    The term "Applicable Interest Rate" shall mean the annual interest rate on 30-year U.S. Treasury securities, determined pursuant to procedures prescribed by the Secretary of the Treasury or his delegate for the purpose of applying Section 417(e)(3) of the Code, or, if no such procedure is described, then as published monthly in Federal Reserve Releases G.13 and H.15 as of the second month preceding the Stability Period.

(ii)    The term "Applicable Mortality Table" shall mean the table prescribed by the Secretary of the Treasury or his delegate for the purposes of applying Section 417(e) of the Code.

(iii)    The term "Stability Period" shall mean the Plan Year in which occurs the Benefit Commencement Date of the payment to which reference is made.

Actuarial Equivalent Value for any optional forms of payment shall be determined in accordance with the 1983 Group Annuity Mortality Table for males, with ages set back two (2) years, and an interest rate equal to eight percent (8%).

Notwithstanding the foregoing, effective for Plan Years beginning on and after January 1, 2008, the present value of any benefit under the Plan to which Code Section 417(e)(3) is applicable shall be determined by using: (i) the mortality table specified for the Plan Year under Code Section 417(e)(3)(B); and (ii) the interest rate prescribed under Code Section

- 2 -

417(e)(3)(c), which shall be the adjusted first, second and third segment rates applied under the minimum funding rules of Code Section 430(h)(2)(C) (derived from a corporate bond yield curve prescribed by the Internal Revenue Service which reflects the yields on investment grade corporate bonds with varying maturities) for the month before the date of distribution or such other time as prescribed by the Internal Revenue Service, applying the applicable transitional rules for Plan Years 2008 through 2011.

1.5     "Actuary" shall mean that individual who is an "enrolled actuary" as defined in Section 7701(a)(35) of the Code or that firm of actuaries which has on its staff such an actuary, appointed by the Pension Committee.

1.6     "Adjustment Factor" shall mean the cost of living adjustment factor prescribed by the Secretary of the Treasury under Section 415(d) of the Code.

1.7     "Affiliated Employer" shall mean AEGON USA, Inc., and any other entity which is a member of a "controlled group of corporations," a group under "common control," or an "affiliated service group," all as determined under Sections 414(b), (c), (m), or (o) of the Code, or, solely for purposes of Section 14.1, the rules set forth in Section 415(h) of the Code, regardless of whether or not such entities have adopted the Plan.

1.8     "Attained Age" shall mean, unless clearly indicated to the contrary, the age of an Employee or Participant as of his or her last birthday.

1.9     "Authorized Leave of Absence" shall mean any absence authorized by an Employer under the Employer's standard personnel practices, provided that all persons under similar circumstances must be treated alike in the granting of such Authorized Leaves of Absences and provided further that the Participant retires or returns within the period specified in the Authorized Leave of Absence.

1.10     "Beneficiary" shall mean any person or persons (or a trust) designated by a Participant in such form and manner as the Company may prescribe to receive benefits payable under Article VI and Article VIII, if such person or persons survive the Participant. A married Participant may not designate a Beneficiary other than his or her Spouse without the consent of his or her Spouse obtained in the manner described in Article VIII. In the case of a Participant who designated his or her Spouse as Beneficiary, such designation shall become null and void immediately upon the effective date of the Participant's divorce from such Spouse. Notwithstanding the foregoing, in no event shall the term "Beneficiary" include any person or persons who is convicted of either voluntary or involuntary manslaughter in connection with the death of the Participant.

1.11     "Benefit Commencement Date" shall mean the first day of the month for which a benefit is payable to an individual, even though the first payment may not actually have been made at that date.

1.12     "Board or Board of Directors" shall mean the Board of Directors of the Company.

1.13     "Break in Service" shall mean a Plan Year during which an Employee who has terminated employment has been credited with fewer than five hundred one (501) Hours of

CH02/ 22456036.10

Service.  Rules for determining restoration of pre-Break in Service employment for purposes of determining a Participant's Accrued Benefit are provided in Section 3.5.

1.14    "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.

1.15    "Company" shall mean AEGON USA, Inc., a corporation organized and existing under the laws of the State of Iowa, or its successor or successors.

1.16    "Computation Period" shall mean the Plan Year, except for purposes of determining eligibility, in which case it shall mean the twelve (12) month period commencing with the Eligible Employee's Employment Commencement Date.  If the Eligible Employee fails to satisfy the requirements for eligibility in that twelve (12) month period, the Computation Period to be used for determining eligibility for that Eligible Employee shall thereafter be the Plan Year.

1.17    "Contingent Beneficiary" shall mean the person or persons (or a trust) duly designated by the participant to receive a benefit from the Plan in the event the designated Beneficiary does not survive the Participant.  Notwithstanding the foregoing, in no event shall the term "Contingent Beneficiary" include any person or persons who is convicted of either voluntary or involuntary manslaughter in connection with the death of the Participant.

1.18    "Covered Compensation" shall mean the average (without indexing) of the Social Security taxable wage bases in effect for each calendar year during the thirty-five (35) year period ending with the last day of the calendar year in which the Participant attains (or will attain) Social Security retirement age.  A thirty-five (35) year period is used for all Participants regardless of the Participant's year of birth.    In determining a Participant's Covered Compensation for a Plan Year, the Social Security taxable wage base for all calendar years beginning after the first day of the Plan Year is assumed to be the same as the Social Security taxable wage base in effect as of the beginning of the Plan Year.  A Participant's Covered Compensation for a Plan Year beginning after the thirty-five (35) year period is the Participant's Covered Compensation for the Plan Year in which the thirty-five (35) year period ends.  A Participant's Covered Compensation for a Plan Year before the thirty-five (35) year period is one-twelfth (1/12) of the Social Security taxable wage base in effect as of the beginning of the Plan Year.  Each Participant's Covered Compensation shall automatically be adjusted for each Plan Year, provided that no such adjustment shall result in a reduction of the Participant's Accrued Benefit in violation of Section 411(d)(6) of the Code.

1.19    "Credited Service" shall mean the period of a Participant's employment considered in determining the amount of the Participant's Accrued Benefit determined in accordance with Section 3.2.

1.20    "Death Benefit" shall mean any benefit paid to a Beneficiary or Contingent Beneficiary or other person at the death of a Participant as provided under the terms of the Plan.

1.21    "Deferred Vested Benefit" shall mean the benefit to which a vested Participant would be entitled in the event of Termination, as determined in accordance with Article VI.

- 4 -

1.22    "Disability Retirement Date" shall mean the date on which a Participant ceases to be either in active payroll status or receiving short-term disability payments from his or her Employer, and shall apply only with respect to a Participant who becomes entitled to receive a Monthly Retirement Income at his or her Normal Retirement Date provided he or she remains Totally and Permanently Disabled until his or her Normal Retirement Date.

1.23    "Disabled Participant" shall mean any Participant who is Totally and Permanently Disabled.

1.24    "Early Retirement Benefit" shall mean the benefit to which a Participant would be entitled in the event of his or her retirement prior to his or her Normal Retirement Date, as calculated in accordance with Article V.

1.25    "Early Retirement Date" shall mean, in the case of each Participant who has reached Attained Age fifty-five (55) and who has been credited with at least ten (10) years of Early Retirement Service, the first day of the month coincident with or immediately following the later of (a) the day immediately following the date the Participant incurs a Termination in accordance with Section 5.4 hereof, or (b) the date the Participant notifies the Pension Committee in writing shall be his or her Early Retirement Date; however, in no instance shall this be retroactive to a date earlier than the notice to the Pension Committee.

1.26    "Early Retirement Service" shall mean the period of employment determined in accordance with Section 3.4.

1.27    "Earnings" shall mean, subject to the provisions of Sections (b) through (e), for any period, compensation received from an Employer that is includible in the employee's gross income for that period, including base pay; overtime compensation; holiday and vacation pay; pay for jury duty; funeral attendance; military duty and Authorized Leaves of Absence; commissions and performance bonuses; short-term incentive bonus pay; and short-term disability payments. Earnings also shall include any compensation deferred by the Employee pursuant to salary reduction elections that are not includible in the gross income of the Employee under Sections 125, 132(f) or 402(g) of the Code (i.e., cafeteria plan, transportation or parking, or 401(k) plan contributions). Earnings shall be credited during periods of Qualified Military Service in accordance with Section 414(u) of the Code.

(a)    Notwithstanding the foregoing provisions of this Section 1.27, all other items of extra pay, including but not limited to the following, shall not be included in Earnings:

(i)    payments from and amounts deferred under all nonqualified deferred compensation plans;

(ii)    compensation in the form of qualified or previously qualified deferred compensation;

(iii)    non-qualified defined contribution plan contributions;

(iv)    compensation received as long-term incentive pay covering a performance period of one year or more.  For purposes of this paragraph (iv), an incentive plan

- 5 -

which measures Employee performance over a 12 month period but makes payments over multiple years after the Plan Year in which the incentive pay plan measures performance is a long-term incentive plan subject to the provisions of this paragraph (iv);

(v)    income generated from stock options or attributable to the exercise of stock options;

(vi)    severance pay, whether in a lump sum or through salary continuation;

(vii)    settlements in connection with termination of employment;

(viii)    employer matching contributions to the Company's qualified 401(k) plan and non-qualified defined contribution plan;

(ix)    overpayments, whether or not corrected;

(x)    cash payments from insurance or other employee benefit programs, such as medical, dental and long-term disability benefits;

(xi)    cash and non-cash prizes;

(xii)    teaching fees;

(xiii)    non-cash compensation deemed taxable or not during the period, including but not limited to the imputed value of group term life insurance;

(xiv)    the value of non-cash fringe benefits, including non-cash incentive awards and financial planning services;

(xv)    reimbursed expenses, including but not limited to the value of employer-paid moving expenses, including mortgage subsidy payments, auto lease and rental payments, education expenses and reimbursements, and reimbursed expenses for adoption assistance (except in the case of adoption assistance reimbursements provided by means of salary reductions through a cafeteria plan);

(xvi)    state disability insurance refunds;

(xvii)    income resulting from elections under Section 83(b) of the Code;

(xviii)    income resulting from property vesting pursuant to Section 83 of the Code;

(xix)    any special compensation paid on account of assignment in foreign countries, including but not limited to cost of living payments or tax equalization or tax gross-up payments;

(xx)    hiring and other bonuses not related to performance (including retention incentives and employee referral bonuses);

- 6 -

(xxi)   special compensation that is paid as a result of or in connection with an acquisition or divestiture of an Employer or Affiliated Employer, or of a division, operating location or other business unit of an Employer or Affiliated Employer, regardless of whether related to performance, unless the Plan is otherwise amended to recognize such special compensation as Earnings under the Plan;

(xxii)   payments made to the Participant in the Plan Year the Participant terminates employment in lieu of vacation and floating holidays; and

(xxiii)   Payments made to a Participant under certain short term incentive compensation plans not included in Schedule A.

(b)   <u>Increase in Compensation Limit</u>.   The Earnings of each Participant taken into account in determining benefit accruals in any Plan Year shall not exceed the limitations on compensation set forth in Section 401(a)(17) of the Code.

1.28   "<u>Eligibility Service</u>" shall mean the period of employment as counted for determining an Employee's right to become a Participant in the Plan, as determined in accordance with Section 3.1 and subject to the Participation requirements of Article II.

1.29   "<u>Eligible Employee</u>" shall mean any full-time or part-time regular Employee. The determination of Eligible Employee status shall be subject to the following Sections.

(a)   A full-time regular employee is an Employee whose normal work schedule is for a minimum of thirty-seven and one-half (37.5) hours a week.

(b)   A part-time regular employee is an Employee whose normal work schedule is for a minimum of twenty (20), but less than thirty-seven and one-half (37.5) hours a week.

(c)   Any Leased Employee or nonleased person who provides services to the Employer pursuant to an agreement between the Employer and any other person or organization, and any person designated, compensated or otherwise classified or treated by the Employer as an independent contractor, are not considered an Eligible Employee for purposes of participating in the Plan, whether or not deemed a common-law employee or an employee for employment tax or other purposes, retroactively or otherwise.   However, if such Leased Employee becomes an Eligible Employee, such person shall be credited with Credited Service and Early Retirement Service from his or her Employment Commencement Date, and Eligibility Service and Vesting Service from the date such Eligible Employee first began performing services for the Affiliated Employer, as required by Section 414(n) of the Code.

(d)   Any Employee who is a part of a collective bargaining unit for which benefits have been the subject of good faith negotiation shall not be considered an Eligible Employee unless and until his or her Employer and the collective bargaining unit representative for that unit through the process of good faith bargaining agree in writing for coverage hereunder.

- 7 -

(e)  Any Employee of an Employer other than an Employee described in Section 1.29(c) or Section 1.29(d) who is credited with at least one thousand (1,000) Hours of Service in either his or her initial year of employment or in any Plan Year thereafter shall be an Eligible Employee as defined herein.

(f)  A person performing services for an Employer in a capacity not contemplated by the preceding terms of this Section 1.29, such as an intern or a cooperative student, shall not be considered an Eligible Employee.  However, if such person becomes an Eligible Employee, such person shall be credited with Credited Service and Early Retirement Service from his or her Employment Commencement Date, and Eligibility Service and Vesting Service from the date such Eligible Employee first began performing services for the Affiliated Employer as an intern or cooperative student.

(g)  An employee who is concurrently accruing benefits under another qualified defined benefit retirement plan maintained by an Employer or Affiliated Employer shall not be considered an Eligible Employee.

1.30  "Employee" shall mean any person who is a common-law employee or a Leased Employee of an Employer or an Affiliated Employer.  A person is not considered a common law employee at any given time, unless, at such time, the Employer classifies that person as a common-law employee.

1.31  "Employer" shall mean the Company and each Affiliated Employer which adopts the Plan with the consent of the Company.  Employers are listed on Schedule B, which is attached hereto and made a part hereof.  Schedule B shall be amended or supplemented from time to time to reflect changes in the list of Employers.  However, failure to add or delete an Employer's name from Schedule B shall not affect the Employer's status as such.

1.32  "Employment Commencement Date" shall mean the date on which the Eligible Employee first is credited with an Hour of Service following his or her first day of employment (or reemployment following a Break in Service) with an Employer.

1.33  "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time.

1.34  "Final Average Earnings" shall mean the highest amount obtainable by averaging the calendar year Earnings of a Participant paid in any five (5) complete consecutive calendar years, disregarding entirely any calendar years of a Participant that are not "complete years," even for the purpose of determining what calendar years are consecutive, or the total number of complete years as an Eligible Employee, if less than five (5) years.

A "complete year" shall mean a calendar year in which the Participant has earned one thousand (1,000) Hours of Service and is employed on January 5th and on December 27th in the calendar year.

1.35  "Highly Compensated Employee" shall be determined in accordance with Article XIV.

- 8 -

1.36    "Hour of Service" shall mean an Hour of Service calculated in accordance with Section 3.6.

1.37    "Joint Annuitant" shall mean the Beneficiary who may receive a Monthly Retirement Income after the death of the Participant should he or she survive the Participant, based on the provisions of a Joint and Contingent Annuity or a Joint and Survivor Annuity, as described in Article VIII.

1.38    "Key Employee" shall be determined in accordance with Article XIII.

1.39    "Leased Employee" shall mean any person defined in Code Section 414(n)(2) and the U.S. Treasury Regulations issued thereunder.

1.40    "Life Annuity" shall mean a Monthly Retirement Income payable in equal unreduced monthly payments during the Participant's lifetime, with no further payments to any other person after the Participant's death.

1.41    "Monthly Retirement Income" shall mean a monthly income due a Retired Participant which shall commence as of his or her Early, Normal or Postponed Retirement Date, or the commencement date of benefit payments under Article VI hereof, and continue for the period indicated in Article VIII hereof.

1.42    "Named Fiduciary" shall mean a fiduciary designated as such under the provisions of Section 15.12.

1.43    "Normal Retirement Date" means the first day of the calendar month coincident with or next following a Participant's Attained Age sixty-five (65) and the earlier of either:

(a)    the fifth (5th) anniversary of the Participant's Participation in the Plan, or

(b)    the date the Participant becomes vested in the Plan.

1.44    "Participant" shall mean any Eligible Employee who becomes a Participant in the Plan pursuant to Article II and shall include any individual who has incurred a Termination and for whom there is still a liability under the Plan.

1.45    "Participation" shall mean service while an Active Participant.

1.46    "Participation Date" shall mean January 1 and July 1 in each calendar year.

1.47    "Pension Committee" shall mean the committee of individuals appointed by the Board to decide appeals of adverse benefit determinations under the Plan.

1.48    "Plan" shall mean the Plan designated as the AEGON USA, Inc. Pension Plan, as embodied herein, and any amendments thereto.

1.49    "Plan Year" shall mean the twelve (12) month period beginning on January 1 and ending on December 31.

- 9 -

1.50    "Postponed Retirement Benefit" shall mean the benefit that a Participant would be entitled to in the event of his or her retirement after his or her Normal Retirement Date, as calculated in accordance with Article V.

1.51    "Postponed Retirement Date" shall mean the first day of the month coincident with or immediately following the later of (a) the day immediately following the Participant's Termination Date, if such date is later than the Participant's Normal Retirement Date, or (b) the date the Participant notifies the Pension Committee in writing shall be his or her Postponed Retirement Date, if such date is later than the Participant's Normal Retirement Date; however, in no instance shall this be retroactive to a date earlier than the notice to the Pension Committee.

1.52    "Predecessor Employer" shall mean, with respect to an Employee, certain acquired or predecessor entities, including one or more of the following, if the Employee was previously employed by them or any of their subsidiaries:  Life Investors Insurance Company of America, Monumental Life Insurance Company, National Old Line Insurance Company, AEGON Reinsurance Company of America, Commonwealth General Corporation and Transamerica Corporation.

1.53    "Qualified Dependent" shall mean a natural or adopted child or children of the Participant.  Notwithstanding the foregoing, in no event shall the term "Qualified Dependent" include any person or persons who is convicted of either voluntary or involuntary manslaughter in connection with the death of the Participant.

1.54    "Qualified Military Service" shall mean service in the uniformed services, as defined in Chapter 43 of Title 38, United States Code.

1.55    "Spouse" shall mean the husband or wife of a Participant to whom he or she is legally married, under the laws of the state in which he or she has legal domicile, at the earlier of the Participant's date of death or the date benefits commence to the Participant under the Plan.

1.56    "Termination" shall mean the cessation of active payroll status with an Employer or the cessation of temporary disability payments from an Employer.

1.57    "Termination Date" shall mean the date on which a Participant ceases to be either in active payroll status or ceases receiving short-term disability payments from his or her Employer.

1.58    "Total and Permanent Disability or Totally and Permanently Disabled" shall mean a physical or mental condition arising after the Employment Commencement Date of the Participant which causes the Participant to be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.  The determination as to whether a Participant is Totally and Permanently Disabled shall be made either by the claims administrator for the Company's Long Term Disability Plan or upon evidence that the Participant is eligible for disability benefits under the Social Security Act in effect at the date of disability.

CH02/ 22456036.10

1.59  "Trust Agreement" shall mean the AEGON USA, Inc. Pension Trust Agreement As Amended and Restated Effective January 1, 2004, which was entered into between the Company and the Trustees for the amendment, restatement and continuation of the pension trust of all contributions that may be made to the Trust Fund for the funding of benefits under the Plan.

1.60  "Trust Fund" shall mean any fund provided for in a trust arrangement, an insurance contract or a combination of both, which is maintained in accordance with the terms of the Trust Agreement, as from time to time amended, to which contributions under the Plan on and after the Effective Date will be made, and out of which benefits are paid to the Participants or otherwise provided for.

1.61  "Vesting Service" shall mean the period of employment of a Participant that is counted in determining a Participant's right to vest in his or her Accrued Benefit as determined under Section 3.3.

## ARTICLE II

## PARTICIPATION AND TRANSFERS

2.1  Participation.  All Participants who were participating in the Plan on December 31, 2006, shall become Participants of the Plan on the Effective Date of this Restatement. Any other Eligible Employee shall become a Participant on his or her Participation Date coincident with or next following the first date on which he or she has both attained age twenty-one (21) and completed one (1) year of Eligibility Service, unless expressly provided for to the contrary in Article III of the Plan or in an amendment to this Plan.

2.2  Termination of Participation.  A Participant who incurs a Termination at a time when he or she is not entitled to Monthly Retirement Income or to a Deferred Vested Benefit shall cease Participation at his or her Termination.  A Participant who incurs a Termination and who is entitled to a Monthly Retirement Income or a Deferred Vested Benefit shall cease Participation upon receipt of payments equal to his or her total Accrued Benefit provided hereunder.

2.3  Re-employment.  A Participant who incurs a Break in Service and is later re-employed as an Eligible Employee will recommence Participation when he or she again satisfies the conditions of Section 2.1, except that if the Participant was vested in his or her Accrued Benefit at his or her prior Termination, he or she will recommence Participation in the Plan effective upon his or her performing one Hour of Service, subject to his or her completion of one (1) year of Eligibility Service. If an Employee incurs a Termination Date after satisfying the conditions of Section 2.1, but before he or she has a Participation Date, and then returns to employment with an Employer without incurring a Break in Service, he or she shall commence Participation immediately upon his or her next Participation Date.

2.4  Benefit Offset.  If any Participant is, becomes, or upon proper application would become entitled to a pension or other benefits under any other qualified defined benefit pension plan of which any Employer has borne, or is required to bear, any part of the cost, the Monthly

CH02/ 22456036.10

Retirement Income payable to such Participant under the provisions of this Plan shall be reduced to reflect the value of such other qualified defined benefit pension plan to the extent that credit is granted under both Plans for the same period of service. The term "other qualified defined benefit pension plan" shall not include any plan or program under which benefits are provided wholly or in part by public funds, state or federal.

If any Participant who has received the Actuarial Equivalent Value of his or her Accrued Benefit or Accrued Employee Contribution Benefit is subsequently re-employed, the Actuarial Equivalent Value of his or her Monthly Retirement Income at his or her subsequent retirement or Termination shall be reduced by the Actuarial Equivalent Value of the benefit previously distributed to him or her.

2.5     <u>Transfer to an Employer</u>.  A Participant who is an Employee of an Employer and who transfers his or her employment to or otherwise becomes an Employee of another Employer hereunder without incurring a Break in Service shall continue to be covered by this Plan without interruption. For purposes of the Plan, he or she shall be considered an Employee of his or her former Employer through the last day of the calendar year coincident with or otherwise immediately following the date as of which his or her transfer of employment occurred, after which he or she shall be considered an Employee of his or her new Employer for all purposes of the Plan.

2.6     <u>Transfer to an Affiliated Employer that is not an Employer</u>.  A Participant who becomes employed by an Affiliated Employer that is not an Employer as defined herein shall remain covered by this Plan only until the date of such transfer of employment. Effective as of such date, such Participant shall become a limited Participant in the Plan and Section 6.1 shall not be applicable. As a limited Participant and so long as he or she remains in the employ of an Affiliated Employer, he or she shall continue to earn Hours of Service for purposes of determining Eligibility, Vesting Service and Early Retirement Service as if his or her employer were an Employer. However, no Credited Service shall be granted for the period of his or her employment with the Affiliated Employer that is not an Employer, and if such limited Participant terminates employment without again becoming a full Participant in this Plan, his or her benefits, if any, will be determined on the basis of his or her Credited Service at the time of his or her transfer of employment. His or her Final Average Earnings and Covered Compensation will be determined at the time of his or her transfers of employment from the Employer to the Affiliated Employer.

2.7     <u>Transfer from an Affiliated Employer that is not an Employer</u>.  An Employee who transfers employment from an Affiliated Employer that is not an Employer as defined herein to an Employer hereunder shall, for purposes of determining eligibility to participate hereunder, and for purposes of Vesting Service and Early Retirement Service, but not for purposes of Credited Service, receive Hours of Service for his or her prior periods of employment with such Affiliated Employer. The Employee shall be eligible for the Plan immediately, provided he or she satisfies the participation requirements of Section 2.1. The Employee's Employment Commencement Date for determining his or her Credited Service shall be the date he or she transfers to an Employer hereunder. Notwithstanding the preceding sentence, if the Affiliated Employer from which the Employee transferred employment sponsored a qualified defined benefit pension plan in which the employee was a participant, the Employee's Employment Commencement Date for

determining his or her Credited Service shall be determined in accordance with the terms of the qualified defined benefit pension plan of his or her prior employer, and the Benefit Offset provided in Section 2.4 shall be applicable in determining his or her benefit hereunder.

2.8    Resumption of Full Participation.  A limited Participant in this Plan under Section 2.6 who returns to the employ of an Employer and the status of Eligible Employee hereunder shall again become a full Participant in the Plan on the date of such transfer.  A Participant in this Plan who is subject to the terms of this Section 2.8 shall be entitled to benefits equal to those retained as a limited Participant plus such additional benefits as he or she might earn as a full Participant again.

2.9    Change from Eligible Employee to Employee while Remaining Employed by the Same Employer.  If a Participant hereunder ceases to be an Eligible Employee while remaining an Employee of an Employer, he or she shall cease to accrue Credited Service as of the date of such change and shall become a limited Participant hereunder until such time as he or she again becomes an Eligible Employee as defined herein.  If such limited Participant does not again become an Eligible Employee as defined herein prior to his or her Termination, the amount, if any, of the benefit to which he or she is entitled hereunder and eligibility for an Early Retirement Benefit shall be determined based on his or her Credited Service and Early Retirement Service as of the date of his or her change from Eligible Employee to Employee, his or her Attained Age at Termination Date, his or her Vesting Service including his or her period as a limited Participant, and his or her Final Average Earnings and Covered Compensation as of the date of his or her change from Eligible Employee to Employee.

2.10    Plan Binding.  Upon becoming a Participant, a Participant shall be bound then and thereafter by the terms of this Plan and the Trust Agreement, including all amendments to the Plan and the Trust Agreement made in the manner herein authorized.

## ARTICLE III

## SERVICE

3.1    Eligibility Service.  An Eligible Employee's right to become a Participant under the Plan shall be determined by his or her Eligibility Service and the Participation requirements of Section 2.1.  An Eligible Employee shall be credited with one (1) year of Eligibility Service if he or she performs one thousand (1,000) or more Hours of Service during the Computation Period commencing with his or her Employment Commencement Date or, if he or she fails to perform one thousand (1,000) or more Hours of Service in that Computation Period, he or she shall be credited with one (1) year of Eligibility Service if he or she performs one thousand (1,000) Hours of Service in any Computation Period commencing after his or her Employment Commencement Date.  If an Eligible Employee incurs a Break in Service, Eligibility Service prior to his or her Termination Date shall not be counted until the Eligible Employee performs one (1) year of Eligibility Service following his or her Break in Service.

3.2    Credited Service.  The amount of Accrued Benefit payable to or on behalf of a Participant shall be determined on the basis of his or her Credited Service.  A Participant shall be credited with one (1) year of Credited Service for each Plan Year as an Eligible Employee during

- 13 -

which at least one thousand (1,000) Hours of Service are completed.  If an Eligible Employee completes less than one thousand (1,000) Hours of Service in the Plan Year of his or her Employment Commencement Date or Termination Date occurs, the Eligible Employee shall be credited with a fractional year of Credited Service equal to the number of Hours of Service Completed in such Plan Year divided by two thousand (2,000).  After attaining age twenty-one (21), Credited Service is retroactive to the Eligible Employee's Employment Commencement Date.

3.3     Vesting Service.  A Participant's right to vest in his or her Accrued Benefit shall be determined by his or her Vesting Service.  An Employee shall be credited with one (1) year of Vesting Service for each Plan Year in which he or she is credited with one thousand (1,000) or more Hours of Service.

3.4     Early Retirement Service.  Whether a Participant shall be eligible to receive an Early Retirement Benefit shall be determined on the basis of his or her Early Retirement Service. Early Retirement Service shall be the period or periods of employment determined as follows:

(a)     Pre-2000.  For employment prior to January 1, 2000, with an Affiliated Employer, a Participant shall be credited with Early Retirement Service equal to the Credited Service he or she had earned as of December 31, 1999, in accordance with the terms of this Plan.

(b)     2000 and After.  For employment after December 31, 1999, with an Affiliated Employer, a Participant shall be credited with one (1) year of Early Retirement Service for each Plan Year as an Eligible Employee during which at least one thousand (1,000) Hours of Service are completed.  If an Eligible Employee completes less than one thousand (1,000) Hours of Service in any Plan Year on or after January 1, 2000, the Eligible Employee shall be credited with a fractional year of Early Retirement Service equal to the number of Hours of Service completed in such Plan Year divided by two thousand (2,000).

(c)     Retroactive Service.  After attaining age twenty-one (21), Early Retirement Service is retroactive to Employment Commencement Date.

3.5     Break in Service.

(a)     Vested Participants.  For a former Participant who satisfied the requirements of the Plan for vested benefits at the time of a Break in Service, and who again is employed and recommences participation in the Plan pursuant to Article II, his or her Eligibility Service, Credited Service, Vesting Service and Early Retirement Service from his or her date of reemployment and his or her pre-break Eligibility Service, Credited Service, Vesting Service and Early Retirement Service shall be restored in determining his or her rights and benefits under the Plan.

(b)     Non-vested Participants and other Eligible Employees.  For a former Participant who had not fulfilled the requirements for vested benefits at the time of a Break in Service, or other Eligible Employee, who again is employed and recommends participation in the Plan pursuant to Article II, his or her years of pre-break Eligibility Service, Credited Service, Vesting Service and Early Retirement Service shall be restored only if the number of his or her consecutive years of Break in Service was less than five (5).

- 14 -

(c)    <u>Maternity and Paternity Leave</u>.  Notwithstanding Section 3.5(a) and Section 3.5(b), and solely to determine whether a Break in Service has occurred, a Participant who is absent from work for a "Maternity or a Paternity Leave" shall receive Hours of Service that would otherwise have been credited to such Participant but for such absence, or in any case in which the Pension Committee is unable to determine the Hours of Service which would normally have been credited to the Employee, eight (8) Hours of Service per day of absence, provided, however, that the total number of hours treated in this manner as Hours of Service shall not exceed five hundred and one (501) Hours of Service.  The hours described in the preceding sentence shall be credited in the Plan Year in which the absence from work begins if the Employee would be prevented from incurring a Break in Service in such period solely because the period of absence is treated as Hours of Service as provided above.  Otherwise, the Hours of Service shall be credited on behalf of the Employee in the immediately following Plan Year.

For the purposes of this Plan, Maternity or Paternity Leave means termination of employment or absence from work due to the pregnancy of the Eligible Employee, the birth of a child of the Eligible Employee, the placement of a child in connection with the adoption of the child by an Eligible Employee, or the caring for an Eligible Employee's child during the period immediately following the child's birth or placement for adoption. The Pension Committee shall determine, under rules of uniform application and based on information provided to the Pension Committee by the Eligible Employee, whether or not the Eligible Employee's termination of employment or absence from work is due to Maternity or Paternity Leave.

(d)    <u>Family and Medical Leave</u>.  An Authorized Leave of Absence mandated by the Family and Medical Leave Act of 1993 is not included in determining whether an Employee has experienced a Break in Service.

(e)    <u>Qualified Military Service</u>.  An Authorized Leave of Absence due to Qualified Military Service shall not constitute a Break in Service and shall be considered Eligibility Service, Credited Service and Vesting Service, provided that the Eligible Employee complies with all of the requirements of Federal law including the Uniformed Service Employment and Reemployment Rights Act of 1994 in order to be entitled to re-employment and provided further that the Employee returns to employment with the Employer within the period provided by such law.

3.6    <u>Hour of Service</u>.

(a)    <u>Credit for Hours of Service</u>.  An Employee shall be credited with an Hour of Service for:

(i)    Each hour for which a person is directly or indirectly paid, or entitled to payment, by an Affiliated Employer or a Predecessor Employer for the performance of duties. These hours shall be credited to the person during the appropriate Computation Period in which the duties are performed;

(ii)    Each hour for which the Employee is directly or indirectly paid, or entitled to payment, by an Affiliated Employer or a Predecessor Employer for reasons other than

- 15 -

for the performance of duties (such as vacation, holiday, illness, incapacity including disability, jury duty, military duty, leave of absence, or layoff), except that, all such hours attributable to vacation time for which the Employee receives payment (in lieu of such vacation) from the Affiliated Employer or Predecessor Employer during the Computation Period that contains the Employee's Termination Date, or the next following Computation Period, shall be excluded. These hours shall be credited to the Employee during the Computation Period in which the nonperformance of duties occurs, but the total credit for any single continuous period during which the employee performs no duties (whether or not in a single Computation Period) of such hours shall not exceed 501 hours. The computation of non-work hours described in this Section 3.6(a)(ii) will be computed in accordance with the provisions of the Department of Labor Regulation Section 2530.200b-2. Notwithstanding the foregoing provisions of this Section 3.6 of the Plan, the Plan shall not recognize Hours of Services for floating holidays for which the Participant receives payment in lieu of such floating holidays in the Plan Year in which the Participant terminates employment; and

(iii)     Each hour for which back pay, irrespective of mitigation of damages, has been either awarded or agreed to by an Affiliated Employer or Predecessor Employer. These hours will be credited to the person for the Plan Year to which the award or agreement pertains.

(b)     Month of Employment Equivalency. In calculating Hours of Service the Company shall, in lieu of actual hour counting, use the following equivalency for salaried and commissioned Employees for whom exact hour counting would be administratively burdensome, provided the equivalency shall be reasonable and nondiscriminatory, and shall be consistently applied:  Any calendar month of employment for which an Employee would have been credited under the general rules with at least one Hour of Service shall be treated as one hundred and ninety (190) Hours of Service. In interpreting the foregoing equivalency the Company shall rely on Department of Labor Regulations Section 2530.200b-3, (b) and (c), which regulation is incorporated in the Plan by this reference.

(c)     Hours of Service Prior to Acquisition or Merger. Hours of Service occurring prior to the date an employee becomes an Employee as a result of an acquisition or merger of an Affiliated Employer, shall not be recognized under the Plan for purposes of determining an Eligible Employee's Early Retirement Service, Eligibility Service, Vesting Service, and Credited Service, unless expressly provided for in an agreement under which the Affiliated Employer became such or as provided by resolution of the Board amending this Plan. If less than the entire period of employment with an Affiliated Employer prior to its becoming such is to be taken into account in determining Hours of Service, the extent to which such period of employment is to be taken into account shall be provided by resolution of the Board amending this Plan.

## ARTICLE IV

## SUSPENSION OF BENEFITS

4.1     Suspension of Benefits—Postponed Retirement. If a Participant's employment with an Employer continues after his or her Normal Retirement Date and such employment after

his or her Normal Retirement Date constitutes Section 203(a)(3)(B) Service (as defined in Section 4.4), such Participant's benefits will be suspended, provided that the Company notifies the Participant that his or her benefits have been suspended in the manner provided by Section 4.3.

4.2     Suspension of Benefits—Rehires.  If a Participant receiving benefits hereunder is rehired by the Employer, payment of those benefits will be suspended as long as the rehired Employee remains employed with the Employer, provided such employment constitutes Section 203(a)(3)(B) service (as defined in Section 4.4) and provided that the Pension Committee notifies him or her that benefits have been suspended, in the manner provided by Section 4.3. Any previous election of a form of benefit payment the rehired Participant had elected shall be canceled, and the Participant's Eligibility Service, Early Retirement Service, Vesting Service, and Credited Service at the time of his or her earlier Termination Date shall be reinstated.

4.3     Suspension of Benefit Notice.  The notice required under Section 4.1 or Section 4.2 shall contain:

(a)     a description of the specific reasons for the suspension of benefit payments,

(b)     a general description of the Plan's provisions relating to the suspension,

(c)     a copy of such provisions,

(d)     a statement to the effect that applicable Department of Labor regulations may be found in Section 2530.203-3 of the Code of Federal Regulations, and

(e)     a description of the Plan's procedure for affording a review of such suspension.

Such notice shall be furnished by personal delivery or first-class mail during the first calendar month in which payments are discontinued.

4.4     Section 203(a)(3)(B) Service.  In accordance with U.S. Department of Labor Regulations Section 2530.203-3, "Section 203(a)(3)(B) Service" shall be determined on a monthly basis and an Employee shall be deemed to be in Section 203(a)(3)(B) Service in any month in which he or she shall perform forty (40) or more Hours of Service. An Employee shall have the right to contest the determination of his or her status in accordance with the procedures set forth in the notice described in Section 4.3(e).

4.5     Recommencement of Benefits.  Benefits that are suspended in accordance with Section 4.1 or Section 4.2 shall be paid in any month in which the Participant is not considered to be in Section 203(a)(3)(B) Service. If an Employee becomes entitled to benefits hereunder by virtue of a new Early, Normal, Postponed, or Disability Retirement Date, his or her eligibility for Monthly Retirement Income shall be determined, calculated and paid as if he or she were then first retiring, based on such reinstated Eligibility Service, Early Retirement Service, Vesting Service and Credited Service, plus the Eligibility Service, Early Retirement Service, Vesting

- 17 -

Service and Credited Service earned during his or her re-employment, and his or her Final Average Earnings and Covered Compensation at his or her subsequent Retirement Date. The Monthly Retirement Income payable at his or her subsequent Retirement Date shall be adjusted as provided in Section 4.6.

4.6 Adjustment for Suspension of Benefits. The otherwise payable Monthly Retirement Income of any Participant who had previously become entitled to a Monthly Retirement Income, but whose benefit payments were suspended pursuant to the provisions of this Article IV shall be reduced by the Actuarial Equivalent of any payments previously made to him or her. In no event shall the Participant's Monthly Retirement Income at his or her subsequent retirement be less than the Actuarial Equivalent of any Monthly Retirement Income he or she was receiving or was entitled to receive prior to his or her re-employment.

## ARTICLE V

## REQUIREMENTS FOR MONTHLY RETIREMENT INCOME

5.1 General. A Participant who has reached his or her Retirement Date shall be entitled to retire and receive a Monthly Retirement Income in accordance with this Article V, subject to the limitations and restrictions elsewhere in this Plan. Notwithstanding any provision of the Plan to the contrary, it shall be the responsibility of a Participant entitled to a Monthly Retirement Income to notify the Company or its delegate when payment of his or her Monthly Retirement Income is to begin, except that in no instance may the Monthly Retirement Income begin retroactively to a date earlier than the date of notice to the Company or its delegate. Except as required under Section 5.6, a Participant's Monthly Retirement Income shall not commence if the Participant does not so notify the Company or its delegate. It shall also be the responsibility of the Participant to notify the Company or its delegate of the address to which his or her benefit payments are to be sent.

5.2 Normal Retirement. If a Participant retires upon his or her Normal Retirement Date, he or she shall be entitled to retire and receive a Monthly Retirement Income as a Life Annuity. A Participant's Monthly Retirement Income shall be his or her Accrued Benefit. A Participant's Monthly Retirement Income shall commence on the Participant's Normal Retirement Date, subject to Section 5.1.

Notwithstanding the preceding paragraph, in no event shall the Participant's Monthly Retirement Income payable as a Life Annuity at his or her Normal Retirement Date be less than the Monthly Retirement Income he or she could have received as a Life Annuity had he or she retired under Section 5.4 and elected immediate commencement of benefits at any time after fulfilling the eligibility requirements set forth therein.

5.3 Postponed Retirement. If a Participant continues in employment after his or her Normal Retirement Date, he or she shall be entitled to a Monthly Retirement Income payable in the form of a Life Annuity in an amount equal to his or her Accrued Benefit, however, payment of the Monthly Retirement Income shall commence on the Participant's Postponed Retirement Date unless otherwise required by Section 5.6.

CH02/ 22456036.10

5.4     Early Retirement.  A Participant who terminates from employment prior to his or her Normal Retirement Date but on or after having Attained Age fifty-five (55), and who has completed at least ten (10) years of Early Retirement Service, may retire as of an Early Retirement Date.

At the election of the Participant, the Participant may receive his or her Monthly Retirement Income commencing at his or her Early Retirement Date, equal to the Participant's Accrued Benefit multiplied by the applicable Early Retirement Reduction Factor, based on the Participant's Attained Age at his or her Early Retirement Date and the number of years of Early Retirement Service.

| Early Retirement Reduction Factors for terminations after Attained Age fifty-five (55) or older for Accrued Benefits Determined under Section 7.1. | | |
|---|---|---|
| Attainted Age at Benefit Commencement | If fifteen (15) or more Years of Early Retirement Service | At least ten (10), but fewer than fifteen (15) Years of Early Retirement Service |
| 55 | 50% | 36.7% |
| 56 | 53 | 40.3 |
| 57 | 56 | 44.3 |
| 58 | 60 | 48.7 |
| 59 | 64 | 53.7 |
| 60 | 70 | 59.3 |
| 61 | 76 | 65.5 |
| 62 | 82 | 72.6 |
| 63 | 88 | 80.6 |
| 64 | 94 | 89.7 |
| 65 | 100 | 100.0 |

(a)     Interpolation.  If the Participant's Attained Age at his or her Benefit Commencement Date is the Attained Age specified in the Table above plus one (1) or more full months, the applicable Early Retirement Reduction Factor shall be determined by interpolation on the basis of the Participant's actual Attained Age in years and full months on each such date.

(b)     Presumed Early Retirement.  A Participant who terminated employment for any reason after meeting the requirements of this Section 5.4 and before reaching his or her Normal Retirement Date will be considered to have retired under this Section 5.4.

5.5     Disability Retirement.  Except as provided in an Appendix hereto, if a Participant becomes a Disabled Participant prior to his or her Normal Retirement Date, and is eligible to receive a Monthly Retirement Income he or she shall receive a Monthly Retirement Income equal to his or her Accrued Benefit, payable as of his or her Early, Normal or Postponed Retirement Date.  If a Disabled Participant recovers from Total and Permanent Disability and

CH02/ 22456036.10

experiences a Break in Service, his or her Participation shall recommence according to Section 2.1.

    5.6    <u>Requirements Concerning Distributions</u>.

    (a)    <u>General Rules</u>.

This Section 5.6 is intended to reflect regulations published under Section 401(a)(9) of the Code. All distributions required under this Section 5.6 shall be determined and made in accordance with the U.S. Treasury Regulations under Section 401(a)(9) of the Code.

    (b)    <u>Time and Manner of Distribution</u>.

    (i)    <u>Required Beginning Date</u>. The Participant's entire interest shall be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Beginning Date.

    (ii)    <u>Death of Participant before Distributions Begin</u>. If the Participant dies before distributions begin, the Participant's entire interest shall be distributed, or begin to be distributed, no later than as follows:

    (A)    If the Participant's surviving spouse is the Participant's sole Designated Beneficiary, then distributions to the surviving spouse shall begin (1) by December 31 of the calendar year immediately following the calendar year in which the Participant died, or (2) by December 31 of the calendar year in which the Participant would have attained age 70½, if later.

    (B)    If the Participant's surviving spouse is not the Participant's sole Designated Beneficiary, distributions to the Designated Beneficiary shall begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

    (C)    If there is no Designated Beneficiary as of December 31 of the year following the year of the Participant's death, the Participant's entire interest shall be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

    (D)    If the Participant's surviving spouse is the Participant's sole Designated Beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving spouse begin, this paragraph (ii), shall apply as if the surviving spouse were the Participant.

    For purposes of this paragraph (ii) and subsection (e) below, distributions are considered to begin on the Participant's Required Beginning Date (or, if subparagraph (ii)(D) applies, the date distributions are required to begin to the surviving spouse under subparagraph (ii)(A)). If annuity payments irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's surviving spouse before the date distributions

CH02/ 22456036.10

are required to begin to the surviving spouse under subparagraph (ii)(A)), the date distributions are considered to begin is the date distributions actually commence.

(iii)  Form of Distribution.  Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first Distribution Calendar Year distributions shall be made in accordance with subsections (c), (d), (e), and (f) below.  If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder shall be made in accordance with the requirements of Section 401(a)(9) of the Code and the U.S. Treasury Regulations thereunder.  Any part of the Participant's interest which is in the form of an individual account described in Section 414(k) of the Code shall be distributed in a manner satisfying the requirements of Section 401(a)(9) of the Code and the U.S. Treasury Regulations thereunder that apply to individual accounts.

(c)  Determination of Amount To Be Distributed Each Year.

(i)  General Annuity Requirements.  If the Participant's interest is paid in the form of annuity distributions under the Plan, payments under the annuity shall satisfy the following requirements:

(A)  The annuity distributions shall be paid in periodic payments made at intervals not longer than one year;

(B)  The distribution period shall be over a life (or lives) or over a period certain not longer than the period described in subsections (d) or (e) below;

(C)  Once payments have begun over a period certain, the period certain shall not be changed, even if the period certain is shorter than the maximum permitted;

(D)  Payments shall either be nonincreasing or increase only as follows:

(1)  With an annual percentage increase that does not exceed the annual percentage increase in an eligible cost-of-living index (within the meaning of U.S. Treasury Regulation Section 1.401(a)(9)-6, Q&A-14) for a twelve-month period ending in the year during which the increase occurs or the prior year;

(2)  With a percentage increase that occurs at specified times (e.g., at specified ages) and does not exceed the cumulative total of annual percentage increases in an eligible cost-of-living index since the Benefit Commencement Date or, if later, the date of the most recent percentage increase (provided that no actuarial increase shall be provided to reflect the fact that increases were not provided in interim years);

(3)  To the extent of the reduction in the amount of the Participant's payments to provide for a survivor benefit upon death, but only if the beneficiary whose life was being used to determine the distribution period described in subsection (d) below

- 21 -

dies or is no longer the Participant's beneficiary pursuant to a "qualified domestic relations order;"

(4)     To pay increased benefits that result from an amendment to the Plan;

(5)     To allow a beneficiary to convert the survivor portion of a joint and survivor annuity into a single-sum distribution upon the Participant's death; or

(6)     To the extent increases are permitted in accordance with U.S. Treasury Regulation Section 1.401(a)(9)-6, Q&A-14(c) or (d).

(ii)     <u>Amount Required To Be Distributed by Required Beginning Date.</u> The amount that must be distributed on or before the Participant's Required Beginning Date (or, if the Participant dies before distributions begin, the date distributions are required to begin under subparagraphs (b)(ii)(A) or (B) above) is the payment that is required for one payment interval. The second payment need not be made until the end of the next payment interval, even if that payment interval ends in the next calendar year. Payment intervals are the periods for which payments are received, e.g., bimonthly, monthly, semiannually, or annually. All of the Participant's benefit accruals as of the last day of the first Distribution Calendar Year shall be included in the calculation of the amount of the annuity payments for payment intervals ending on or after the Participant's Required Beginning Date.

(iii)     <u>Additional Accruals after First Distribution Calendar Year.</u>  Any additional benefits accruing to the Participant in a calendar year after the first Distribution Calendar Year shall be distributed beginning with the first payment interval ending in the calendar year immediately following the calendar year in which such amount accrues.

(d)     <u>Requirements for Annuity Distributions that Commence During Participant's Lifetime.</u>

(i)     <u>Joint Life Annuities Where the Beneficiary Is Not the Participant's Spouse.</u>  If the Participant's interest is being distributed in the form of a joint and survivor annuity for the joint lives of the Participant and a nonspouse beneficiary, annuity payments to be made on or after the Participant's Required Beginning Date to the Designated Beneficiary after the Participant's death must not at any time exceed the applicable percentage (using the adjusted employee/beneficiary age difference) of the annuity payment for such period that would have been payable to the Participant using the table set forth in U.S. Treasury Regulation Section 1.401(a)(9)-6, Q&A-2. If the form of distribution combines a joint and survivor annuity for the joint lives of the Participant and a nonspouse beneficiary and a period certain annuity, the requirement in the preceding sentence shall apply to annuity payments to be made to the Designated Beneficiary after the expiration of the period certain.

(ii)     <u>Period Certain Annuities.</u>  Unless the Participant's spouse is the sole Designated Beneficiary and the form of distribution is a period certain and no life annuity, the period certain for an annuity distribution commencing during the Participant's lifetime may not exceed the applicable distribution period for the Participant under the Uniform Lifetime

- 22 -

Table set forth in U.S. Treasury Regulation Section 1.401(a)(9)-9 for the calendar year that contains the Benefit Commencement Date. If the Benefit Commencement Date precedes the year in which the Participant reaches age 70, the applicable distribution period for the Participant is the distribution period for age 70 under the Uniform Lifetime Table set forth in U.S. Treasury Regulation Section 1.401(a)(9)-9 plus the excess of 70 over the age of the Participant as of the Participant's birthday in the year that contains the Benefit Commencement Date. If the Participant's spouse is the Participant's sole Designated Beneficiary and the form of distribution is a period certain and no life annuity, the period certain may not exceed the longer of the Participant's applicable distribution period, as determined under this paragraph (ii), or the joint life and last survivor expectancy of the Participant and the Participant's spouse as determined under the Joint and Last Survivor Table set forth in U.S. Treasury Regulation Section 1.401(a)(9)-9, using the Participant's and spouse's attained ages as of the Participant's and spouse's birthdays in the calendar year that contains the Benefit Commencement Date.

    (e)   <u>Requirements for Minimum Distributions Where Participant Dies before Date Distributions Begin</u>.

    (i)   <u>Participant Survived by Designated Beneficiary</u>. If the Participant dies before the date distribution of his interest begins and there is a Designated Beneficiary, the Participant's entire interest shall be distributed beginning no later than the time described in subparagraphs (b)(ii)(A) or (B) above, over the life of the Designated Beneficiary or over a period certain not exceeding:

    (A)   Unless the Benefit Commencement Date is before the first Distribution Calendar Year, the Life Expectancy of the Designated Beneficiary determined using the Beneficiary's age as of the Beneficiary's birthday in the calendar year immediately following the calendar year of the Participant's death; or

    (B)   If the Benefit Commencement Date is before the first Distribution Calendar Year, the Life Expectancy of the Designated Beneficiary determined using the Beneficiary's age as of the beneficiary's birthday in the calendar year that contains the Benefit Commencement Date.

    (ii)   <u>No Designated Beneficiary</u>. If the Participant dies before the date distributions begin and there is no Designated Beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest shall be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

    (iii)   <u>Death of Surviving Spouse before Distributions to Surviving Spouse Begin</u>. If the Participant dies before the date distribution of his interest begins, the Participant's surviving spouse is the Participant's sole Designated Beneficiary, and the surviving spouse dies before distributions to the surviving spouse begin, this subsection (e) shall apply as if the surviving spouse were the Participant, except that the time by which distributions must begin shall be determined without regard to subparagraph (b)(ii)(A) above.

- 23 -

(f)     Changes in Annuity Payment Period.  If a stream of annuity payments otherwise satisfies this Section 5.6, the annuity payment period may be changed, and the annuity payments may be modified in association with that change, provided that the following requirements are satisfied:

(i)     One of the following applies:

(A)     The change occurs at the time that the Participant retires or in connection with a Plan termination;

(B)     The annuity payments prior to change are annuity payments paid over a period certain without life contingencies; or

(C)     The annuity payments after the change are paid under a qualified joint and survivor annuity over the joint lives of the Participant and a Designated Beneficiary, the Participant's spouse is the sole Designated Beneficiary, and the change occurs in connection with the Participant's marriage to such spouse;

(ii)     The future payments under the modified stream satisfy the requirements of this Section 5.6 (determined by treating the date of the change as a new Benefit Commencement Date and the actuarial equivalent present value of the remaining payments prior to the change as the entire interest of the Participant);

(iii)     For purposes of Sections 415 and 417 of the Code, the date of the change is treated as a new Benefit Commencement Date;

(iv)     After taking into account the change, the annuity stream satisfies Section 415 of the Code (determined at the original Benefit Commencement Date, using the interest rates and mortality tables applicable at such date); and

(v)     The end point of the period certain, if any, for any modified payment is not later than the end point that was available under this Section 5.6 at the original Benefit Commencement Date.

(g)     Definitions.  The following definitions shall apply for purposes of this Section 5.6:

(i)     "Designated Beneficiary" shall mean the individual who is designated as the Beneficiary under Section 1.11 and is the designated beneficiary under Section 401(a)(9) of the Code and U.S. Treasury Regulation Section 1.401(a)(9)-4 of the Code.

(ii)     "Distribution Calendar Year" shall mean a calendar year for which a minimum distribution is required.  For distributions beginning before the Participant's death, the first Distribution Calendar Year is the calendar year immediately preceding the calendar year which contains the Participant's Required Beginning Date.  For distributions beginning after the Participant's death, the first Distribution Calendar Year is the calendar year in which distributions are required to begin pursuant to paragraph (b)(ii) above.

- 24 -

(iii)    "Life Expectancy" shall mean life expectancy as computed by use of the Single Life Table in U.S. Treasury Regulation Section 1.401(a)(9)-9.

(iv)    "Required Beginning Date" shall mean:

(A)    In the case of a Participant who is a 5% owner (within the meaning of Section 401(a)(9)(C)(ii)of the Code), no later than April 1 of the calendar year following the calendar year in which the Participant attains age 70½; and

(B)    In the case of a Participant who is not a 5% owner, April 1 of the calendar year following the calendar year in which the Participant attains age 70½, provided, however, that a Participant hired after May 21, 2003 shall not commence receiving benefits until the Participant actually has a termination of employment with the Employer.

5.7    Direct Rollovers. Any Participant, Beneficiary, alternate payee who is a spouse or former spouse under a qualified domestic relations order (as defined in Section 414(p) of the Code), or Contingent Beneficiary (determined without regard to Subsection 8.6(c)) (the "Transferor" for purposes of this Section 5.7) entitled to receive an eligible rollover distribution from the Plan, may elect to have all or some portion of such amount rolled over directly to an eligible retirement plan, except that if the Transferor is a non-spouse Beneficiary or Contingent Beneficiary (determined without regard to Subsection 8.6(c)) such transfer may be made only to an eligible retirement plan which is an individual retirement account described in Code Section 408(a) or an individual retirement annuity described in Code Section 408(b) (other than an endowment contract). Such person shall specify to the Sponsoring Employer, in such form and manner as the Sponsoring Employer may require, the eligible retirement plan to which the eligible rollover distribution is to be rolled over.  If the Participant, Beneficiary, alternate payee spouse or former spouse, or Contingent Beneficiary (determined without regard to Subsection 8.6(c)) makes such an election, the distribution shall be made by the Company in the form of a direct rollover to the eligible retirement plan.

For purposes of the preceding paragraph, an eligible rollover distribution is a distribution of all or any portion of the balance to the credit of the Participant, Beneficiary, alternate payee spouse or former spouse, or Contingent Beneficiary (determined without regard to Subsection 8.6(c)) in this Plan, excluding (a) any distribution which is one of a series of substantially equal periodic payments (made not less frequently than annually) made (i) for the life or life expectancy of the individual or the joint lives or joint life expectancies of the individual and his or her designated beneficiary, or (ii) for a specified period of ten (10) years or more; (b) any distribution which is required to be made under Section 401(a)(9) of the Code; and (c) any portion of a distribution that is not includible in the individual's gross income.

An eligible retirement plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code (other than an endowment contract), a qualified plan described in Section 401(a) of the Code that is exempt from tax under Section 501(a) of the Code, or an annuity plan described in Section 403(a) of the Code, an annuity contract described in Section 403(b) of the Code and an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which

- 25 -

agrees to separately account for amounts transferred into such plan from this Plan.   The definition of eligible retirement plan shall also apply in the case of a distribution to a Beneficiary surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relation order, as defined in Section 414(p) of the Code.

In the event a Participant, Beneficiary, alternate payee spouse or former spouse, or Contingent Beneficiary (determined without regard to Subsection 8.6(c)) does not elect within the time period prescribed by law to have his or her eligible rollover distribution rolled over directly, he or she will be deemed to have elected not to make a direct rollover.   The taxable portion of the individual's distribution will be paid directly to him or her with Federal income tax withheld from such eligible rollover distribution at the rate of twenty percent (20%) pursuant to Section 3405(c) of the Code.   Notwithstanding the foregoing or any other provision of the Plan to the contrary, in the event of an involuntary lump sum distribution greater than $1,000 payable to a Participant in accordance with Section 6.6, if the Participant does not elect to have such distribution paid directly to an eligible retirement plan specified by him/her in a direct rollover or to receive the distribution directly in accordance with this Section 5.7, then the distribution to the Participant shall be made by the Company in a direct rollover to an individual retirement plan designated by the Company.

## ARTICLE VI

## OTHER BENEFITS AT TERMINATION OF EMPLOYMENT OR DEATH

6.1    <u>Deferred Vested Benefits</u>.

(a)    <u>Deferred Vested Benefit at Normal Retirement Date</u>.   A Participant who has incurred a Termination for any reason other than death or retirement, either voluntarily or involuntarily, shall cease to be an Active Participant in the Plan.   Subject to the limitations and restrictions elsewhere in the Plan, and if the Participant has been credited with five (5) or more years of Vesting Service at his or her Termination Date, such Participant shall be entitled to a Deferred Benefit of a Monthly Retirement Income payable as a Life Annuity commencing at Normal Retirement Date, equal to his or her Accrued Benefit, less any amount cashed out pursuant to Section 6.5, Section 8.5(c), or elsewhere in this Plan.

(b)    <u>Deferred Vested Benefit after Normal Retirement Date</u>.   A Participant entitled to a Deferred Vested Benefit who commences receiving a Monthly Retirement Income after his or her Normal Retirement Date, shall be entitled to a Deferred Vested Benefit of a Monthly Retirement Income payable in the form of a Life Annuity commencing at the Benefit Commencement Date requested by the Participant, equal to his or her Accrued Benefit, such amount increased in accordance with the 1983 Group Annuity Mortality Table for males, with ages set back two (2) years, and an interest rate equal to eight percent (8%) (or such other actuarial factors as may be required by the Code), less any amount cashed out pursuant to Section 6.5, Section 8.5(c), or elsewhere in this Plan.

(c)    <u>Deferred Vested Benefit at Early Retirement Date - Early Commencement</u>.   Except as provided below, in lieu of the Monthly Retirement Income payable at Normal Retirement Date provided above, a Participant entitled to a Deferred Vested Benefit as

- 26 -

provided in Section 6.1(a) who has been credited with ten (10) years or more of Early Retirement Service at his or her Termination Date shall be entitled at any time after reaching Attained Age fifty-five (55) to elect to receive immediate commencement of his or her Deferred Vested Benefit. Commencing on the first day of the month coincident with or immediately following such election, the terminated Participant shall be entitled to a Monthly Retirement Income which shall be equal to his or her Accrued Benefit as of his or her Termination Date multiplied by the appropriate Deferred Vested Reduction Factor determined in accordance with the following table:

| Deferred Vested Reduction Factors for Accrued Benefit Determined under Section 7.1 | |
|---|---|
| Attained Age at Benefit Commencement | Deferred Vested Reduction Factor |
| 55 | 36.7% |
| 56 | 40.3 |
| 57 | 44.3 |
| 58 | 48.7 |
| 59 | 53.7 |
| 60 | 59.3 |
| 61 | 65.5 |
| 62 | 72.6 |
| 63 | 80.6 |
| 64 | 89.7 |
| 65 | 100.0 |

(d)   Interpolation.   If the Participant's Attained Age at his or her Benefit Commencement Date is the Attained Age specified in the above table, plus one (1) or more full months, the applicable Deferred Vested Reduction Factor shall be determined by interpolation on the basis of the Participant's actual Attained Age in years and full months on each such date.

(e)   Notification.   It shall be the responsibility of any Participant entitled to receive a Deferred Vested Benefit to notify the Company when payment of his or her Monthly Retirement Income is to begin, except that in no instance may a Monthly Retirement Benefit begin retroactively to a date earlier than the notice to the Pension Committee. Subject to Section

- 27 -

5.6, a Participant's Deferred Vested Benefit shall not commence if the Participant does not so notify the Company or its delegate. It shall also be the responsibility of the Participant to notify the Pension Committee of the address to which his or her benefit payments are to be sent.

(f)     Forms of Deferred Vested Benefit.     Subject to the provisions of Article VIII, at any time prior to commencement of his or her Monthly Retirement Income, a terminated Participant who would otherwise have his or her Monthly Retirement Income paid in the Normal Benefit Forms provided in Section 8.2(a) or Section 8.2(b) may elect to receive an Actuarially Equivalent Monthly Retirement Income payable in any of the forms provided in Section 8.5, as applicable.   In the event of the death of a terminated Participant prior to the commencement of benefits, his or her Spouse shall be entitled to receive a Death Benefit under Section 6.3.   If the terminated Participant had no Spouse, then his or her Qualified Dependents shall be entitled to receive a Death Benefit under Section 6.2.   If the terminated Participant had no Qualified Dependents, no Death Benefit is payable.

(g)     Notwithstanding anything to the contrary in this Section 6.1, if a Participant was fully vested in his or her accrued benefit under a Predecessor to this Plan, that Participant shall be fully vested in his or her Accrued Benefit under this Plan, pursuant to Section 414(a) of the Code.

6.2     Death Benefits - Qualified Pre-retirement Survivor's Annuity or Actuarial Equivalent Value.   Any person entitled to a Death Benefit under this Section 6.3 shall be responsible for notification of the Company or its delegate when payment of his or her Monthly Retirement Income is to be made or to begin to be made, except that, in no instance may the Monthly Retirement Income be made or begin to be made retroactively to a date earlier than the date of notice to the Company or its delegate.   Except as required under Sections 5.6 and Section 6.1(b), payment of a Death Benefit under Section 6.3 shall not commence if the person entitled to such Death Benefit does not so notify the Company or its delegate.   It shall also be the responsibility of such person to notify the Company or its delegate of the address to which his or her benefit payments are to be sent.

In the case of a Participant with a vested right to his or her Accrued Benefit under the Plan who dies before his or her Benefit Commencement Date, a Death Benefit shall be provided as follows:

(a)     Participant Eligible to Retire.   If, at the date of the Participant's death, the Participant was eligible to retire and receive a Monthly Retirement Income under the Plan at a Normal, Early, or Postponed Retirement Date, then a Death Benefit shall be calculated as follows:

(i)     If the Participant had a Spouse at the Participant's date of death and paragraph (a)(ii) below does not apply, the Participant's Spouse shall be eligible to receive a Death Benefit equal to the amount of the Monthly Retirement Income that would have been payable to the Spouse if the Participant had retired on the day preceding the Participant's date of death and elected a Fifty Percent (50%) Joint and Contingent Annuity, with the Spouse as Joint Annuitant.

- 28 -

(ii)     If the Participant had a Spouse at the Participant's date of death, and the Spouse had consented to a non-spousal Beneficiary or Contingent Beneficiary in the manner provided in Section 8.4(c) or, if the Participant did not have a Spouse at the Participant's date of death, and the Participant had designated a Beneficiary or Contingent Beneficiary, then the Beneficiary or Contingent Beneficiary, as applicable, shall be eligible to receive a Death Benefit equal to the amount that would have been payable if the Participant had retired on the day preceding the Participant's date of death and had elected a Fifty Percent (50%) Joint and Contingent Annuity with the Beneficiary or Contingent Beneficiary, as applicable, as Joint Annuitant, calculated as if the Beneficiary or Contingent Annuitant was the same age as the Participant on the Participant's date of death.

(b)     <u>Participant Not Eligible to Retire</u>.  If at the date of the Participant's death, the Participant was not eligible to retire and receive a benefit at a Normal, Early, or Postponed Retirement Date, then a Death Benefit shall be calculated as follows:

(i)     If the Participant had a Spouse at the Participant's date of death and paragraph (b)(ii) below does not apply, the Participant's Spouse shall be eligible to receive a Death Benefit amount, calculated in accordance with paragraph (iii) of this subsection (b).

(ii)     If the Participant had a Spouse at the Participant's date of death and the Spouse had consented to a non-spousal Beneficiary or Contingent Beneficiary in the manner provided in Section 8.4(c) or, if the Participant did not have a Spouse at the Participant's date of death and the Participant had designated a Beneficiary or Contingent Beneficiary, then the Beneficiary or Contingent Beneficiary, as applicable, shall be eligible to receive a Death Benefit equal to the Actuarial Equivalent Value of the Monthly Retirement Income that would have been payable to the Beneficiary or Contingent Beneficiary, calculated in accordance with paragraph (iii) of this subsection (b).

(iii)     The amount of the Death Benefit, if any, payable under this subsection (b) shall be calculated using the following assumptions:

(A)     the Participant separated from service on the earlier of his or her Termination Date or the date of his or her death;

(B)     the Participant survived to the earliest date he or she could have retired and received a benefit under the Plan under Article V;

(C)     the Participant retired on such date with a benefit in the form of a Fifty Percent (50%) Joint and Contingent Annuity with the Spouse, Beneficiary, or Contingent Beneficiary, as applicable, as Joint Annuitant, but calculated using only actual Credited Service as of the Participant's actual date of death and, solely in the case of a Beneficiary or Contingent Beneficiary, calculated as if the Beneficiary or Contingent Beneficiary was the same age as the Participant on the date determined under subsection (d) below; and

(D)     the Participant died on the day after his or her Benefit Commencement Date.

- 29 -

(c)     Commencement of Death Benefit.   The Death Benefit under Section 6.2(a)(i) or 6.2(b)(i) shall be payable in the form of an annuity over the life expectancy of the Participant's Spouse, provided that the Spouse may elect to receive the Actuarial Equivalent Value of such Death Benefit in a single lump sum.  Such Death Benefit shall be paid or begin to be paid, as applicable, to the Participant's Spouse as of the first day of the month coinciding with or next following the earliest date the Participant could have retired and received a benefit under the Plan pursuant to Article V, had the Participant not died; provided however that, the Participant's Spouse may elect to defer the date distributions are paid or begin to be paid, but in no event shall such Death Benefit be paid or begin to be paid later than the date the Participant would have attained his or her Normal Retirement Date, and, if the Spouse dies before payments begin, distributions shall be made as if the Spouse had been the Participant, provided however that, that benefit of a deceased Spouse who has a surviving spouse shall be distributed in accordance with Section 15.5 and in no event shall the deceased Spouse's benefit be paid to his or her surviving spouse.

The Death Benefit under Section 6.2(a)(ii) or 6.2(b)(ii) shall be paid to the Participant's non-spousal Beneficiary or Contingent Beneficiary in a single lump sum on the first day of the month coinciding with or next following the earliest date the Participant could have retired and received a benefit under the Plan pursuant to Article V, had the Participant not died.

(d)     Death Benefit for Qualified Dependents If no Spouse Survives.   If a Participant dies, and is not survived by a Spouse, and has not designated a Beneficiary or Contingent Beneficiary in the manner provided in Section 8.4(c), but he or she is survived by one (1) or more Qualified Dependents, such Qualified Dependents shall be entitled to a Death Benefit.   The Actuarial Equivalent Value of the Death Benefit payable to the Qualified Dependents shall be equal to the Actuarial Equivalent Value of the Death Benefit that would have been payable if the deceased Participant had been survived by a Spouse who was the same age as the Participant, thereafter calculated pursuant to Section 6.2(b)(ii) and (iii).  The Death Benefit payable from the Plan on behalf of the Participant under this Section 6.2(d) shall be divided equally among the Qualified Dependents and the respective portion shall be paid in a lump sum to each Qualified Dependent pursuant to the timing of such distributions given under Section 6.8(b).

(e)     Death Benefit to Participant's Estate if no Spouse, no Named Beneficiary or Contingent Beneficiary, or no Qualified Dependents Survive.  If the Participant is not survived by either a Spouse, a Beneficiary or Contingent Beneficiary named in the manner provided in Section 8.6, or a Qualified Dependent, a Death Benefit shall be payable to the Participant's estate as follows: The Actuarial Equivalent Value of the Death Benefit payable to the estate shall be equal to the Actuarial Equivalent Value of the Death Benefit that would have been payable if the deceased Participant had been survived by a Spouse who was the same age as the Participant, thereafter calculated pursuant to Section 6.2(b)(ii).  The Death Benefit payable from the Plan on behalf of the Participant under this Section 6.2(e) shall be paid in a lump sum to the estate pursuant to the timing of such distributions given under Section 6.8(b).

6.3     Death of Retired or Disabled Participant.  When a Retired or Disabled Participant who is receiving benefits hereunder shall die, his or her Beneficiary shall be entitled to any benefits due under the Normal Form, or elected optional form of payment of his or her Monthly

- 30 -

Retirement Income.  Should the period of guaranteed payments be exhausted at the death of the Retired or Disabled Participant, no Death Benefit shall be payable.

6.4    Reliance upon Affidavits.  In determining any person or persons who are to receive any benefit payable under the Plan, reliance may be made upon an affidavit by a member of any of the classes of Beneficiaries.  Payment based upon such affidavit shall be full acquaintance of any benefit payable under the Plan, unless, before such payment, is made, the Plan has received written notice of a valid claim by some other person.  If two or more persons become entitled to benefits as Beneficiaries, they shall share equally.

6.5    Involuntary Lump Sum Distributions.  If at any time a Participant who has incurred a Termination but has not begun to receive benefit payments, and is entitled to a benefit under Articles V or VI, or his or her Spouse or other Beneficiary under Article VIII, or an alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, has an Actuarial Equivalent Value of five thousand dollars ($5,000) or less, the Actuarial Equivalent Value shall be paid to him or her, to his or her Spouse or other Beneficiary, or to his or her alternate payee in a lump sum, on or about the first anniversary of the Participant's Termination Date, and shall be in lieu of, and in full satisfaction of his or her benefit under the Plan.  Notwithstanding the preceding sentence, in the event of an involuntary lump sum distribution greater than $1,000 payable to a Participant in accordance with this Section, if the Participant does not elect to have such distribution paid directly to an eligible retirement plan specified by the Participant in a direct rollover or to receive the distribution directly in accordance with Section 5.7, then the distribution shall be made by the Company in a direct rollover to an individual retirement plan designated by the Company.  Neither the consent of the Participant or his or her Spouse shall be necessary to make such payment.  Upon the making of such payment, the Participant, his or her Spouse or other Beneficiary, and his or her alternate payee, shall not have any further benefit under this Plan.

The Company shall recalculate the Actuarial Equivalent Value of the benefit of each Participant who has incurred a Termination and who is entitled to a benefit hereunder and each Spouse who is entitled to a Death Benefit hereunder, but whose benefits are not yet in pay status, to determine whether the Actuarial Equivalent Value of the benefit is less than the amount in the preceding paragraph, in which case such benefit shall be paid to the Participant or Spouse in accordance with the provisions of this Section 6.5.

If the Participant who receives the above benefit is re-employed, his or her Accrued Benefit shall be calculated on the basis of his or her total service and Credited Service but the Benefit Offset under Section 2.4 shall be applicable in calculating his or her subsequent benefits payable from the Plan.

A Participant who is not entitled to a Deferred Vested Benefit upon his or her Termination Date shall be considered to be paid a lump sum of $0 upon his or her Termination Date.

6.6    Benefit Commencement Limitations.  Unless the Participant otherwise elects, any payment of benefits to the Participant shall begin not later than sixty (60) days after the close of the Plan Year in which occurs the latest of:

- 31 -

(a)     the Participant's reaching Attained Age sixty-five (65),

(b)     the tenth (10th) anniversary of the date the Employee became a Participant, and

(c)     Termination of the Participant.

6.7     <u>Required Distribution Periods</u>.  Notwithstanding the forms of payment in Article VIII, distributions of benefits may only be made over one of the following periods (or a combination thereof):

(a)     the life of the Participant;

(b)     the life of the Participant and a designated Beneficiary;

(c)     a period certain not extending beyond the life expectancy of the Participant; or

(d)     a period certain not extending beyond the joint and last survivor life expectancy of the Participant and a designated beneficiary.

6.8     <u>Required Distributions Upon Death</u>.  Upon the death of the Participant, the following distribution provisions shall take effect:

(a)     <u>Death After Distribution Commences</u>.  If the Participant dies after distribution of his or her interest has commenced, the remaining portion of such interest will continue to be distributed at least as rapidly as under the method of distribution in effect prior to the Participant's death.

(b)     <u>Death Before Distribution Commences</u>.  If the Participant dies before distribution of his or her interest commences, the Participant's entire interest will be distributed no later than five (5) years after the Participant's death except to the extent that an election is made to receive distributions in accordance with paragraphs (i) or (ii) below:

(i)     If any portion of the Participant's interest is payable to a designated Beneficiary, distributions may be made in substantially equal installments over the life or life expectancy of the designated Beneficiary commencing no later than one (1) year after the Participant's death.

(ii)     If the designated Beneficiary is the Participant's surviving Spouse, the date distributions are required to begin in accordance with Section 6.10(b)(i) shall not be earlier than the date on which the Participant would have an Attained Age of seventy and one-half (70½), and, if the Spouse dies before payments begin, subsequent distributions shall be made as if the Spouse had been the Participant.

(c)     <u>Incidental Death Benefit Rule</u>.  If the Participant's entire interest is to be distributed in other than a lump sum, the amount to be distributed each year must be at least an amount equal to the quotient obtained by dividing the Participant's entire interest by the

- 32 -

Participant's life expectancy or the joint and last survivor life expectancy of the Participant and the designated Beneficiary; provided, if the Participant's Spouse is not the designated Beneficiary, the applicable divisor shall be determined using the table set forth in Q&A6 in U.S. Treasury Regulation Section 1.401(a)(9)-2 until the Participant's death, after which such limitation shall not apply. Life expectancies are computed by the use of the return multiples contained in U.S. Treasury Regulation Section 1.72-9. For purposes of this calculation, a Participant's life expectancy or a Spouse's life expectancy may be recalculated no more frequently than annually; however, the life expectancy of a Beneficiary who is not the Participant's spouse may not be recalculated. If the form of payment includes a life contingency, life expectancy may not be recalculated.

6.9     Special Rule for Participants and Alternate Payees under QDROs. Subject to the QDRO Procedures, either the Participant or the alternate payee under a qualified domestic relations order (which has been approved by the Company) may elect a retroactive annuity starting date (as described in U.S. Treasury Regulations Section 1.417(e)-1). If either the Participant or the alternate payee elects a retroactive annuity starting date, then the first benefit payment to such Participant or alternate payee shall include an amount equal to the sum of the monthly benefit payments that otherwise would have been payable to either the Participant or the alternate payee had either the Participant's or alternate payee's benefit actually commenced as of such date, plus interest at the rate specified in Section 1.4(a) for calculating optional forms of payment.

## ARTICLE VII

## AMOUNT OF ACCRUED BENEFIT

7.1     Accrued Benefit.   A Participant's Accrued Benefit shall be determined in accordance with this Article VII. In no event shall a Participant have an Accrued Benefit, within the meaning of Section 411(d)(6) of the Code, less than the Accrued Benefit under this Plan as of December 31, 2006.

(a)     Except as may otherwise be provided by an Appendix hereto, a Participant's Accrued Benefit shall be an amount equal to one-twelfth (1/12th) of Section 7.1(a)(i) plus Section 7.1(a)(ii), where:

(i)     is equal to: one and two tenths percent (1.2%) of a Participant's Final Average Earnings, multiplied by the Participant's Credited Service not in excess of twenty-five (25) years, plus six tenths percent (0.6%) of a Participant's Final Average Earnings, multiplied by the Participant's Credited Service in excess of twenty-five (25) years; and

(ii)     is equal to: six tenths of one percent (0.6%) of a Participant's Final Average Earnings in excess of Covered Compensation multiplied by the Participant's Credited Service not in excess of twenty-five (25) years plus three tenths of one percent (0.3%) of a Participant's Final Average Earnings in excess of Covered Compensation multiplied by the Participant's Credited Service in excess of twenty-five (25) years.

7.2     Accrued Benefit for Code Section 401(a)(17) Participants.

CH02/ 22456036.10