(a)    Unless otherwise provided under this Plan, effective for each Code Section 401(a)(17) Participant who is credited with one (1) or more Hours of Service in Plan Years beginning January 1, 2000 and after, such Code Section 401(a)(17) Participant's Accrued Benefit under this Plan shall not be less than the greater of the Accrued Benefit determined for the Participant under Section 7.2(b)(i) or Section 7.2(b)(ii) below:

(i)    The Participant's Accrued Benefit determined with respect to the benefit provisions applicable for the Plan Year beginning January 1, 1994, as applied to the Participant's total Credited Service, or

(ii)    The sum of:

(A)    The Participant's Accrued Benefit as of December 31, 1993, frozen in accordance with U.S. Treasury Regulation Section 1.401(a)(4)-(13), and

(B)    The Participant's Accrued Benefit determined under the benefit provisions applicable for the Plan Year beginning on January 1, 1994, as applied to the Participant's Credited Service earned after December 31, 1993.

The term "Code Section 401(a)(17) Participant" shall mean a Participant whose Accrued Benefit as of any date after December 31, 1993, is based on Earnings for a Plan Year beginning prior to January 1, 1994, that exceeded $150,000.

## ARTICLE VIII

## FORMS OF MONTHLY RETIREMENT INCOME

8.1    General.  Monthly Retirement Income payable under the terms of this Article VIII shall be subject to the restrictions and limitations elsewhere in this Plan and shall be paid only at the direction of the Pension Committee.  Neither the Employer nor the Company shall be under any obligations to pay any Monthly Retirement Income other than from the Trust Fund.

8.2    Normal Forms of Monthly Retirement Income.  The Normal Forms of Monthly Retirement Income (to which the Accrued Benefit formula provided in Article VII applies) shall be a Monthly Retirement Income commencing on the Participant's Early, Normal or Postponed Retirement Date or on the date specified in Section 6.1, and payable for his or her lifetime thereafter.

(a)    Life Annuity.  At the earliest time an unmarried Participant could become entitled to commence receiving payments of a Monthly Retirement Income, other than an Involuntary Lump Sum Distribution under the provisions of Section 6.5, a monthly income payable for the Participant's life time, equal to his or her Monthly Retirement Income, shall commence, unless the unmarried Participant elects otherwise.

(b)    Fifty Percent (50%) Joint and Contingent Annuity.  At the earliest time a married Participant could become entitled to commence receiving payments of a Monthly Retirement Income, other than an Involuntary Lump Sum Distribution under the provisions of Section 6.5, a monthly income payable for the Participant 's lifetime, shall commence with fifty

- 34 -

percent (50%) of such amount continuing to the Participant's Spouse, after the Participant's death, for the lifetime of the Spouse, unless the Participant, with the consent of his or her Spouse, if any, elects otherwise. Any consent of the Participant's Spouse shall be made within 180 days before the date the Fifty Percent (50%) Joint and Contingent Annuity would otherwise commence, and shall be executed in accordance with the rules of Section 8.4(c). The Participant's Monthly Retirement Income shall be the Actuarial Equivalent of the monthly amount that would be payable under a Life Annuity.

8.3    Right to Elect. In lieu of the benefits provided under Section 8.1 and Section 8.2, the Participant shall have the right to elect within 30-180 days, prior to his or her Benefit Commencement date, an optional form of payment provided under the terms of this Article VIII. If the Participant is married, any such election may be made only with the consent of his or her Spouse, executed as provided under Section 8.4(c). Any payment shall be the Actuarial Equivalent of the Monthly Retirement Income payable as the Participant's under a Life Annuity.

8.4    Election of Forms. A Participant may make or revoke an election of any form of payment to which the Participant is entitled under this Article VIII in writing to the Pension Committee, and such election or revocation shall be subject to the following conditions:

(a)    Notice. The Company shall furnish to each Participant a general written explanation in nontechnical terms of the availability of the various optional forms of payment under the Plan. Further, no less than thirty (30) days and no more than 180 days prior to the Benefit Commencement Date of a Fifty Percent (50%) Joint and Contingent Annuity, the Pension Committee shall provide to a Participant a written explanation of the terms and conditions of the Fifty Percent (50%) Joint and Contingent Annuity, as specifically applicable to such Participant (and his or her Spouse, if any); an explanation of his or her right to make an election not to have his or her benefit distributed in the form of a Fifty Percent (50%) Joint and Contingent Annuity; an explanation of the rights of his or her Spouse, if any, to consent to such election; and an explanation of the financial effect upon the Participant's benefit of making such election. Such explanation shall be written in a manner intended to be understood by the Participant and his or her Spouse, if any. In the event a Participant requests additional information, as permitted under the terms of the notice, commencement of benefits for any purpose hereunder shall not begin until at least 180 days following the Participant's receipt of such additional information unless the Participant specifically elects earlier commencement and he or she is otherwise entitled to such commencement under the terms of the Plan. Requests for additional information may be made by the Participant at any time before the 180th day prior to the Benefit Commencement Date.

(b)    Timing of Election. An election to receive an optional form of payment may be made at any time during the election period and must be made in writing. The election period is a period of at least thirty (30) days and no more than 180 days immediately preceding the Participant's Benefit Commencement Date and ending on that date, or such other time as provided by regulations or other pronouncements. Notwithstanding the preceding, benefits may commence prior to the expiration of the thirty (30) day period referred to in the second sentence of this Section 8.4(b), if (i) the Participant is informed in writing that he or she has at least thirty (30) days to consider the Fifty Percent (50%) Joint and Contingent Annuity; (ii) the explanation of the terms and conditions of the Fifty Percent (50%) Joint and Contingent Annuity

- 35 -

is given before the Benefit Commencement Date; and (iii) the Participant's benefits do not commence prior to the expiration of the seven (7) day period beginning the day after the explanation of the terms and conditions of the Fifty Percent (50%) Joint and Contingent Annuity is given. A Participant may revoke a distribution election until the later of (1) the Benefit Commencement Date and (2) the expiration of the seven (7) day period beginning the day after the explanation of the terms and conditions of the Fifty Percent (50%) Joint and Contingent Annuity is given. Subject to Section 8.4(c), a Participant may make an election not to receive the Fifty Percent (50%) Joint and Contingent Annuity, revoke any previous election, and if the Participant so desires, make a new election, until the expiration of the election period.

       (c)   <u>Spousal Consent</u>. If a Participant is married, an election of an optional form of payment other than the Fifty Percent (50%) Joint and Contingent Annuity will require the written consent of the Spouse, and such written consent must be witnessed by a notary public or a representative of the Plan. The Participant's election, and the Beneficiary named in the election, must be consented to by the Participant's Spouse unless the Participant elects, as an alternative, one of the optional forms of payment described in this Article VIII with his or her Spouse as Beneficiary. Once given, the Spouse's consent may not be revoked. If it is established to the satisfaction of the Pension Committee that Spouse consent cannot be obtained because there is no Spouse or the Spouse cannot be located, Spouse consent will not be required.

       (d)   <u>No Election</u>. In the event that no election of form of payment is effectively made and it is determined that the Participant is married on the date at which his or her Monthly Retirement Income is to commence, the manner of distribution shall be as provided in Section 8.2(b). In all other instances where no election of an optional form of payment is effectively made, benefits shall be paid as provided in Section 8.2(a).

    8.5   <u>Optional Forms of Payment of Monthly Retirement Income</u>. The optional forms of payment of Monthly Retirement Income that a Participant may elect are any one of the following:

       (a)   <u>Joint and Contingent Annuities</u>. A Monthly Retirement Income payable to the Participant for life, and after his or her death, an amount equal to either fifty percent (50%); sixty-six and two-thirds percent (66-2/3%) or one hundred percent (100%) of such amount, at the election of the Participant as provided in Section 8.4, to the Beneficiary for life. Should the Beneficiary die prior to the Participant's Benefit Commencement Date, any election of this option shall be automatically canceled. If the Participant should die prior to the Benefit Commencement Date, a Death Benefit shall be provided under Article VI. The Participant's Monthly Retirement Income shall be the Actuarial Equivalent of the monthly amount that would be payable under a Life Annuity.

       (b)   <u>Joint and Survivor Annuities</u>. A Monthly Retirement Income payable to the Participant for life, and after either his or her death, or the death of his or her Beneficiary, an amount equal to either fifty percent (50%); or sixty-six and two-thirds percent (66-2/3%) of such amount, at the election of the Participant, as provided in Section 8.4, payable to either the Participant for his or her life, at the death of the Beneficiary, or to the Beneficiary, for his or her life, at the death of the Participant. Should the Beneficiary die prior to the Participant's Benefit Commencement Date, any election of this option shall be automatically canceled. If the

CH02/ 22456036.10

Participant should die prior to the Benefit Commencement Date, a Death Benefit shall be provided under Article VI. The Participant's Monthly Retirement Income shall be the Actuarial Equivalent of the monthly amount that would be payable under a Life Annuity.

(c) <u>Months Certain and Life Annuity.</u> A Monthly Retirement Income payable to the Participant for his or her lifetime with a guaranteed minimum period of either sixty (60) months, one hundred and twenty (120) months, or one hundred and eighty (180) months, at the election of the Participant, as provided in Section 8.4. Except as provided below, in the event of the death of the Participant after the Benefit Commencement Date but prior to the Participant's receiving Monthly Retirement Income for the entire sixty (60) month period, one hundred and twenty (120) month period or one hundred and eighty (180) month period certain, the balance of the payments for the applicable sixty (60) months, one hundred and twenty (120) months or one hundred and eighty (180) months will be paid to the Participant's Beneficiary. In the event of the death of the Participant prior to the Participant's Benefit Commencement Date, the election of any of these optional forms of payment shall be void and of no effect and a Death Benefit shall be provided under Article VI. The Participant's Monthly Retirement Income shall be the Actuarial Equivalent of the monthly amount that would be payable under a Life Annuity.

In the event a Participant has begun receiving payments pursuant to Section 5.6, his or her benefit shall be recalculated, using his or her actual Credited Service and Final Average Earnings as of each December 31 after the Participant's Benefit Commencement Date. In the event benefit payments have begun in an Optional Form of Benefit permitted by this Section 8.5(c), additional benefits earned after the Participant's Benefit Commencement Date shall be paid in the same form. However, the guaranteed period for any additional benefits earned after the Participant's Benefit Commencement Date shall be identical to the guaranteed period that remains for the benefit that began being paid on the Participant's Benefit Commencement Date, and any recalculation of such benefit shall be made with respect to the guaranteed period that remains.

Notwithstanding the above, a Participant's designated Beneficiary or the Participant's estate, as the case may be, may elect to receive the value of the balance of the payments for the applicable sixty (60) months, one hundred and twenty (120) months or one hundred and eighty (180) months due the Participant's Beneficiary or estate in a single sum. The amount of such single sum shall be the commuted value of the remaining payments, computed using the PBGC immediate interest rate for the first month of the Plan Year in which the single sum is paid.

(d) <u>Life Annuity.</u> A Participant who has a Spouse may elect to have the Participant's Monthly Retirement Income payable in equal unreduced monthly payments during the Participant's lifetime, with no further payments to any other person after the Participant's death. If this optional form of payment is elected, the Participant's Monthly Retirement Income shall be the monthly amount that would be payable under a Life Annuity. If the Participant should die prior to the Benefit Commencement Date, a Death Benefit shall be provided under Article VI.

(e) <u>Lump Sums Based on Dollar Amount.</u> If the Participant has incurred a Termination and has a vested benefit under Article VI and has not reached his or her Early

- 37 -

Retirement Date, and his or her Accrued Benefit payable at his or her Normal Retirement Date is not more than two hundred and fifty dollars ($250.00), or if the Participant is retiring on his or her Early, Normal or Postponed Retirement Date (or has reached his or her required beginning date under Section 5.6) and the amount of the Participant's Monthly Retirement Income under the form of a Life Annuity and payable immediately is not more than two hundred and fifty dollars ($250.00), or if the Spouse or other Beneficiary of a deceased Participant or an alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, is entitled to a benefit under this Plan, and the amount of the monthly benefit payable at the earliest commencement date is not more than two hundred and fifty dollars ($250.00), he or she shall be entitled to receive the Actuarial Equivalent Value of the monthly benefit that would otherwise be payable in a lump sum; provided, however, that if the Participant has not reached his or her Early Retirement Date, the Participant may also elect immediate payment in the form of a Fifty Percent (50%) Joint and Contingent Annuity if the Participant is married, and in the form of a Life Annuity if the Participant is not married. Lump sum distributions payable hereunder will be paid as soon as administratively possible, but no such lump sum distribution shall be paid prior to the earliest of the Participant's Death, Early Retirement Date, Normal Retirement Date, or the one year anniversary of the Participant's Termination Date.

8.6 <u>Beneficiary</u>. Payment of benefits will be made to a Participant's Beneficiary or Contingent Beneficiary in the following circumstances:

(a) <u>Named Beneficiary</u>. A Participant may name a Joint Annuitant who is an individual as a Beneficiary for any of the fifty percent (50%), sixty-six and two-thirds percent (66-2/3%) or one hundred percent (100%) Joint and Contingent Annuity optional forms of payment or for either the fifty percent (50%) or sixty-six and two-thirds percent (66-2/3%) Joint and Survivor Annuity optional forms of payment. For the sixty (60) months, one hundred and twenty (120) months or one hundred and eighty (180) months certain and life annuity optional forms of payment, the Participant may elect as a Beneficiary an individual or individuals, or his or her estate, as the Participant shall elect in writing, provided that such individuals are ascertainable, and the shares of each are clearly set forth. If the shares are not clearly set forth, they will be done equally. Subject to the Spousal Consent requirements of Section 8.4(c), the individual or individuals(s) named as a Joint Annuitant or Beneficiary may be other than a Spouse.

(b) <u>Contingent Beneficiary</u>. If a Participant has named a Beneficiary as provided in this Section 8.6, and any Beneficiary predeceases the Participant or is not in existence, not ascertainable, or not locatable at the date benefits become payable to such Beneficiary, benefits shall be paid to such Contingent Beneficiary or Contingent Beneficiaries as shall have been named by the Participant on the Participant's original Beneficiary election.

(c) <u>Unnamed Contingent Beneficiary</u>. If there is no Contingent Beneficiary, then the Contingent Beneficiary shall be the Spouse and if no Spouse, the Qualified Dependents, and if no Qualified Dependents, then the Contingent Beneficiary shall be the Participant's estate).

- 38 -

## ARTICLE IX

### PLAN ADMINISTRATION

9.1    Plan Administrator. The Company shall be the administrator of the Plan and shall have the rights, duties and obligations of an "administrator" as that term is defined in Section 3(16)(A) of ERISA, and of a "plan administrator" as that term is defined in Section 414(g) of the Code. The Company may delegate any of its rights, duties and obligations to a person or committee as determined by the Company from time to time. The Company and its delegates shall have full discretion to construe and interpret the Plan, and to decide all matters arising under it, including eligibility for Plan participation and entitlement to Plan benefits. The determinations of the Company and its delegates shall be final and binding on all parties, including, without limitation, the Company, any other Employer, Employees, Participants, former Participants, Beneficiaries and Alternate Payees, except as otherwise provided by law. The Trustees, the Company and its delegates shall be "named fiduciaries," as described in Section 402 of ERISA, with respect to their respective authority under the Plan.

9.2    Powers and Duties.

(a)    The Company shall have full power and discretion to administer the Plan and to construe and apply all of its provisions including making factual determinations. The Company's powers and duties, unless properly delegated, shall include, but shall not be limited to:

(i)    Designating agents to carry out responsibilities relating to the Plan, other than fiduciary responsibilities.

(ii)    Deciding questions relating to eligibility, continuity of employment, and amounts of benefits.

(iii)    Deciding disputes that may arise with regard to the rights of Employees, Participants and their legal representatives, or Beneficiaries under the terms of the Plan. Decisions by the Company or its delegate will be deemed final in each case.

(iv)    Obtaining information from the Employers with respect to their Employees as necessary to determine the rights and benefits of Participants under the Plan. The Company or its delegate may rely conclusively on such information furnished by the Employer.

(v)    Compiling and maintaining all records necessary for the Plan.

(vi)    Authorizing the payment of all benefits as they become payable under the Plan.

(vii)    Engaging such legal, administrative, consulting, actuarial, investment, accounting, and other professional services as the Company deems proper.

(viii)    Adopting rules and regulations for the administration of the Plan that are not inconsistent with the Plan. The Company or its delegate may, in a nondiscriminatory

- 39 -

manner, waive the timing requirements of any notice or other requirements described in the Plan. Any such waiver will not obligate the Company or its delegate to waive any subsequent timing or other requirements for other Participants.

> (ix)   Interpreting and approving qualified domestic relations orders, as defined in Section 414(p) of the Code.

> (x)   Performing other actions provided for in other parts of this Plan.

> (xi)   Correcting administrative errors or mistakes of fact.

(b)   The Company shall have responsibility for:

> (i)   Allocating fiduciary responsibility, other than trustee responsibilities defined in ERISA Section 405(c), among fiduciaries, and designation of additional fiduciaries.

> (ii)   Selection of insurance contracts and other investments to provide benefits hereunder.

9.3   <u>Actions by Committee</u>.   In the case of any committee delegated authority by the Company under this Article IX, a majority of its members at any time will constitute a quorum. The committee may act at a meeting, or in writing without a meeting, by the vote or assent of a majority of its members.   The committee will appoint a Chairperson and a Secretary.   The Secretary will record all action taken by the committee.   The committee will have authority to designate in writing one of its members or any other person as the person authorized to execute papers and perform other ministerial duties on behalf of the committee.

9.4   <u>Interested Committee Members</u>.   No member of a committee with authority under this Article IX will participate in an action of the committee on a matter that applies solely to that member.   Such matters will be determined by a majority of the remainder of the committee.

9.5   <u>Indemnification</u>.   In the case of any person or committee with authority under this Article IX, the Company, by the adoption of this Plan, indemnifies and holds the such person or committee members, jointly and severally, harmless from the effects and consequences of their acts, omissions, and conduct in their official capacities, except to the extent that the effects and consequences result from their own willful misconduct, breach of good faith, or gross negligence in the performance of their duties.   The foregoing right of indemnification will not be exclusive of other rights to which each such member may be entitled by any contract or other instrument or as a matter of law.

9.6   <u>Conclusiveness of Action</u>.   Any action on matters within the discretion of the Company will be conclusive, final, and binding upon all Participants in the Plan and upon all persons claiming any rights, including Beneficiaries.

9.7   <u>Payment of Expenses</u>.   The members of any committee granted authority under this Article IX will serve without compensation for their services.   The compensation or fees of consultants, actuaries, accountants, counsel and other specialists and any other costs of

administering the Plan or Trust Fund, including any premiums due to the Pension Benefit Guaranty Corporation (PBGC), will be paid by the Trust Fund unless, at the discretion of the Employer, paid by the Employer.

9.8    Claims Procedure. The Company or its delegate shall make all determinations as to the right of any person to a benefit under the Plan. If the Company or its delegate denies in whole or part any claim for a benefit under the Plan by a participant or a beneficiary or his authorized representative ("claimant"), the Company or its delegate shall furnish the claimant with notice of the decision not later than 90 days after receipt of the claim, unless special circumstances require an extension of time for processing the claim. If such an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 90-day period. Such extension shall not exceed the period of 90 days from the end of such initial period; provided, however, that in the event the claimant fails to submit information necessary to decide a claim, such period shall be tolled from the date on which the extension notice is sent to the claimant until the date on which the claimant responds to the request for additional information. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Company or its delegate expects to render the final decision.

The written or electronic notice which the Company or its delegate shall provide to every claimant who is denied a claim for benefits shall set forth in a manner calculated to be understood by the claimant:

(a)    The specific reason or reasons for the denial;

(b)    Specific reference to pertinent Plan provisions on which the denial is based;

(c)    A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(d)    A description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA §502(a) following an adverse benefit determination on review.

A claimant may request that the Company review the claim denial. Such request shall be made in writing and shall be presented to the Company or its delegate not more than 60 days after receipt by the claimant of notification of the denial of a claim. The claimant shall be provided, upon a written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. The claimant shall also have the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits, and the Company or its delegate shall take into account all such information submitted without regard to whether such information was submitted or considered in the initial benefit determination. The Company or its delegate shall make its decision on review not later than 60 days after receipt of the claimant's request for review, unless special circumstances require an extension of time, in which case written notice of

- 41 -

the extension and circumstances shall be provided to the claimant prior to the termination of the initial 60-day period and a decision shall be rendered as soon as possible but not later than 120 days after receipt of the request for review; provided, however, in the event the claimant fails to submit information necessary to make a benefit determination on review, such period shall be tolled from the date on which the extension notice is sent to the claimant until the date on which the claimant responds to the request for additional information. The decision on review shall be written or electronic and, in the case of an adverse determination, shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, and specific references to the pertinent Plan provisions on which the decision is based. The decision on review shall also include (i) a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, or other information relevant to the claimant's claim for benefits; and (ii) a statement describing any voluntary appeal procedures offered by the Plan, and a statement of the claimant's right to bring an action under ERISA §502(a).

It is intended that the claims procedure of this Plan be administered in accordance with the claims procedure regulations of the Department of Labor set forth in 29 CFR §2560.503-1. Accordingly, to the extent such regulations so require, determinations as to whether Plan provisions regarding disability apply to a participant shall be made in accordance with the Department of Labor's claims procedure regulations applicable to claims for disability benefits. A claimant must exhaust the administrative remedies under the Plan prior to bringing a cause of action under the Plan.

9.9    Restriction on Venue.  Any Participant or Beneficiary may bring an action in connection with the Plan only in Federal District Court in Cedar Rapids, Iowa within two years of the initial adverse benefit determination.

## ARTICLE X

## TRUST FUND AND CONTRIBUTIONS

10.1    Employer Contributions.  The Employer intends to make contributions to fund this Plan at such times and in such amounts as the Actuary shall certify to the Employer as being no less than the amounts required to be contributed under Section 412 of the Code. Any actuarial gains arising under the Plan shall be used to reduce future Employer contributions to the Plan and shall not be applied to increase retirement benefits with respect to remaining Participants.

10.2    Non-Diversion of the Trust Fund.  To the extent required by law, the principal or income of the Trust Fund shall be used solely for the exclusive benefit of Participants or Beneficiaries, or to meet the necessary expenses of the Plan, except that upon termination of the Plan, after all the liabilities under the Plan have been satisfied, any property remaining in a Trust Fund as a result of erroneous actuarial computation shall be distributed to one or more Employers.

10.3    Benefits.  Although it is the intention of the Employers that this Plan shall be continued and their contributions made regularly each year, this Plan is entirely voluntary on the

- 42 -

part of the Employers and the continuance of the Plan and the payments thereunder are not assumed as a contractual obligation of any Employer. No Employer guarantees or promises to pay or cause to be paid any of the benefits provided by this Plan.

   10.4 Participants' Rights. This Plan shall not be deemed to constitute a contract between any Employer and any Participant or to be a consideration or an inducement for the employment of any Participant or employee. Nothing contained in this Plan shall be deemed to give any Participant or employee the right to be retained in the service of any Employer or to interfere with the right of any Employer to discharge any Participant or employee at any time regardless of the effect which such discharge shall have upon him as a Participant in the Plan.

   10.5 Spendthrift Clause. None of the benefits under the Plan are subject to the claims of creditors of Participants or their Beneficiaries and will not be subject to attachment, garnishment or any other legal process, except pursuant to a qualified domestic relations order (as defined in Code Section 401(a)(13)). Neither a Participant nor his or her Beneficiaries may assign, sell, borrow on or otherwise encumber any of his or her beneficial interest in this Plan nor shall any such benefits be in any manner liable for or subject to the deeds, contracts, liabilities, engagements, or torts of any Participant or Beneficiary.

   10.6 Return of Contributions. It is intended that this Plan shall be approved and qualified by the Internal Revenue Service as meeting the requirements of the Code and regulations issued thereunder with respect to employees' plans and trusts:

     (a) so as to permit the Employers to deduct for Federal income tax purposes the amounts of their contributions to the Trust Fund;

     (b) so that contributions so made and the income of the Trust Fund will not be taxable to Participants as income until received; and

     (c) so that the income of the Trust Fund shall be exempt from Federal income tax.

   The Employers' contributions under this Plan are conditioned on their being deductible under Section 404 of the Code. In the event the Commissioner of Internal Revenue or his or her delegate rules that a deduction for all or a part of any Employer's contribution is not allowed, the Employer will recover, within one (1) year after the disallowance of such deduction, that portion or all of its contribution for which no deduction is allowed. The Employers also reserve the right to recover that portion or all of any contribution made by a mistake of fact, provided such recovery is made within one (1) year of the payment of the contribution. No earnings on a contribution shall be returned to the Employers and losses on the contributions shall reduce the amount to be returned.

**ARTICLE XI**

**AMENDMENT, TERMINATION AND MERGER OF THE PLAN**

   11.1 Amendment of Plan. The Company reserves the right, at any time and from time to time, without consent of Participants, active or retired, Spouses, Beneficiaries, Contingent

- 43 -

Beneficiaries or any person or persons claiming through them, to modify or amend, in whole or in part, any or all of the provisions of the Plan, including specifically the right to make any such amendments effective retroactively if necessary to bring the Plan into conformity with governmental regulations which must be complied with in order to make the Plan eligible for tax benefits; provided that no such modification or amendment shall make it possible for any part of the assets of the Plan to be used for or diverted to purposes other than for the exclusive benefit of Participants and their Beneficiaries, Spouses and Contingent Beneficiaries under the Plan, prior to the satisfaction of all liabilities with respect to such Participants, and their Beneficiaries, Spouses, and Contingent Beneficiaries under the Plan, except as stated in this Plan. Any such amendment made by the Company of the Sponsoring Employer shall be effective for all Employers without further action on their part. Notwithstanding the foregoing, the addition or removal of an Employer from Schedule B does not constitute an amendment to the Plan. The Company's modifications of Schedule B shall not be deemed an amendment or termination of the Plan.

11.2   Limitations on Right to Amend.   No amendment to the Plan shall be effective to the extent that it has the effect of decreasing a Participant's Accrued Benefit. Notwithstanding the preceding sentence, a Participant's Accrued Benefit may be reduced to the extent permitted under Section 412(c)(8) of the Code. For purposes of this paragraph, a Plan amendment that has the effect of (a) eliminating or reducing an early retirement benefit or a retirement-type subsidy, or (b) eliminating an optional form of benefit, with respect to benefits attributable to Credited Service before the amendment, shall be treated as reducing Accrued Benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a Participant who satisfies the pre-amendment conditions for the subsidy. In general, a retirement-type subsidy is a subsidy that continues after retirement, but does not include a qualified disability benefit, a medical benefit, a Social Security supplement, a death benefit (including life insurance), or a plant shutdown benefit (that does not continue after retirement age). Furthermore, no amendment to the Plan shall have the effect of decreasing a Participant's vested interest determined without regard to such amendment as of the later of the date such amendment is adopted, or the date it becomes effective.

11.3   Amendment of Vesting Schedule.   If the vesting provisions of this Plan are amended, including an amendment caused by the expiration of top-heavy status under the terms of Article XIII, Participants with three (3) or more Years of Service, or three (3) or more years of employment, whether or not consecutive, at the later of the date the amendment is adopted or becomes effective, shall automatically be vested, from that point forward, in the greater of the amount vested under the vesting schedule as amended or the amount vested under the vesting schedule prior to amendment.

11.4   Termination.   The Company may suspend payments to the Trust Fund for any year and may terminate the Plan at any time.

11.5   Apportionment of Trust Fund.   If the Sponsoring Employer terminates the Plan or permanently suspends contributions, the Company shall compute the value of the Trust Fund held for the benefit of Participants, Spouses, Beneficiaries and Contingent Beneficiaries otherwise eligible to receive benefits hereunder. The Pension Committee based upon the certification of the Actuary, shall apportion the amount so valued to all such Participants and/or

- 44 -

their Beneficiaries, Contingent Beneficiaries and Spouses in shares as determined in Section 11.6, but subject to the provisions of Section 11.8.

11.6 _Allocation of Trust Fund._ The value of the Trust Fund computed above remaining after providing for the expenses of administration of the Plan and the Trust Fund shall be allocated for purposes of paying Monthly Retirement Income and Death Benefits in the order of precedence indicated and in the amounts indicated in Section 4044 of ERISA, according to the principles set forth in said Section and such other portions of ERISA as it incorporates by reference. For the purpose of making such allocation, any regulations issued pursuant to that Section shall be deemed part of such Section.

The allocation of the Trust Fund in accordance with this Section 11.6 shall be based on the method of payment of Monthly Retirement Income or Death Benefits specified in the Plan. In the event that the Trust Fund assets on or after the date of termination are insufficient to fund all benefits within any class, the benefits of all higher order of precedence shall be funded, the benefits of all lower order of precedence shall be unfunded, and the assets remaining shall be allocated among members of that class on the basis of their respective actuarial reserves, subject to the provisions of Section 4044 of ERISA.

11.7 _Distribution of Trust Fund._ The application of the Trust Fund on the foregoing basis shall be calculated by the Actuary and certified to the Company as of the date on which the Plan terminated. Subject to the restrictions of ERISA when the calculations shall be completed, the interest of each Participant, Beneficiary, Spouse, and Contingent Beneficiary shall continue to be held in the Trust Fund pursuant to the terms of Section 11.5, or, at the direction of the Company, the appropriate portion of the Trust Fund shall be liquidated and each of their interests distributed to them in the form of annuity contracts, annuity payments, installments, or in a lump sum as determined by the Company. If the Plan is terminated and subject to the limitations of Section 4044(d)(3) of ERISA, any funds remaining after the satisfaction of all liabilities to such Participants, qualified terminated Participants, Beneficiaries, Spouses, and Contingent Beneficiaries under this Plan due to erroneous actuarial computation shall be returned to the Employers.

11.8 _Restrictions on Distributions._ In the event of termination of the Plan, the benefit of any Highly Compensated Employee (including a former employee who is a Highly Compensated Employee) who is among the twenty-five (25) non-excludable employees and former employees of the Company with the largest amount of compensation in the current year or any prior year is limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

11.9 _Nonforfeitability._ Notwithstanding any other provision herein contained (except the provisions of Section 11.8), should the Plan terminate or partially terminate, the rights of all affected past or present Participants to benefits accrued to the date of such termination or partial termination, to the extent then funded, or the amounts credited to the Participants' accounts, shall be nonforfeitable.

11.10 _Benefits on Merger or Consolidation._ In the case of any merger or consolidation with or transfer of assets or liabilities of the Plan to any other plan, such merger, transfer or

- 45 -

consolidation shall, by its terms, provide that each Participant in the Plan would, if the Plan then terminated, receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he or she would have been entitled to receive immediately before the merger, consolidation, or transfer if this Plan had then terminated.

## ARTICLE XII

## ENTRY AND WITHDRAWAL OF AN EMPLOYER

12.1    <u>Entry of an Employer</u>.   The Company, by modification of Schedule B, may consent to an Affiliated Employer becoming an Employer hereunder.

12.2    <u>Withdrawal of an Employer</u>.   The Company, by modification of Schedule B, may consent to the withdrawal of an Affiliated Employer as an Employer hereunder.

## ARTICLE XIII

## TOP-HEAVY PLAN PROVISIONS

13.1    <u>Generally</u>.   Notwithstanding anything contained in the Plan to the contrary, in the event that this Plan when combined with all other plans required to be aggregated pursuant to Section 416(g) of the Code is a Top Heavy Plan for any Plan Year, this Section 13.1 shall become operative with respect to such Plan Year.

13.2    <u>Vesting</u>.   In the event the vesting schedule set forth in Section 6.1 is less liberal than the following vesting schedule, then the following vesting schedule shall be substituted for the vesting schedule in Section 6.1 to the extent that the following schedule is more favorable:

| Years of Vesting Service | Vested Percentage |
| --- | --- |
| Less than 3 years | 0% |
| 3 years or more | 100% |

Should the Plan cease to be a Top Heavy Plan, the vesting schedule in Section 6.1 shall be put back into effect. However, the vested percentage of any Participant cannot be decreased as a result of the return to the prior vesting schedule and any Participant with three (3) or more years of Service may elect, within the later of (a) sixty (60) days after the Plan ceases to be a Top Heavy Plan, or (b) sixty (60) days after the date the Participant is issued written notification of the change in the vesting schedules, to remain under the special vesting rules described in this Section 13.2.

13.3    <u>Minimum Benefit</u>.   For the first Plan Year that the Plan shall be a Top Heavy Plan, and all future Plan Years during which the Plan is a Top Heavy Plan, there shall be a minimum accrued benefit applicable to each Participant who earns a year of Credited Service during the Plan Year equal to two percent (2%) of Top Heavy Compensation multiplied by the Participant's years of Top Heavy Service up to a maximum of ten (10) years. This minimum accrued benefit shall be offset by the annual equivalent of such Participant's Accrued Benefit determined pursuant to Article VII attributable to such Plan Year. If the Plan is a member of a

- 46 -

Top Heavy Group as defined under Section 13.8(c), the minimum accrued benefit for each Top-Heavy Year of Service shall be satisfied by the minimum benefit under the Plan.

13.4     Top Heavy Compensation.   The term "Top Heavy Compensation" shall mean one-twelfth (1/12) of a Participant's average annual Full Compensation during that period of five (5) consecutive Testing Years for which his or her aggregate Full Compensation was the greatest.   If he or she shall have fewer than five (5) consecutive Testing Years, his or her Top Heavy Compensation shall mean his or her average annual Full Compensation during that period containing the largest number of consecutive Testing Years; provided that, if there shall be more than one such period, Top Heavy Compensation shall be calculated on the basis of such period for which such average is the greatest.

13.5     Testing Year.   The term "Testing Year" shall mean a Plan Year that begins prior to the end of the last Plan Year for which the Plan was a Top Heavy Plan, but excluding Plan Years beginning before 1984.

13.6     Full Compensation.    The term "Full Compensation" shall mean, for any Employee for any Plan Year, his or her compensation (as such term is defined in Treasury Regulation Section 1.415-2(d)) from the Employer for the calendar year which ends with or within such Plan Year, but not in excess of the amount authorized pursuant to Section 401(a)(17) of the Code.

13.7     Top Heavy Service.   The term "Top Heavy Service" shall mean a year of Credited Service for a Plan Year in which the Plan is a Top Heavy Plan, with the exception that Credited Service for Plan Years beginning prior to January 1, 1984, shall be excluded.

13.8     Top Heavy Plan.   The term "Top Heavy Plan" shall mean any plan under which, as of any determination date, the present value of the cumulative accrued benefits under the plan for Key Employees exceeds sixty percent (60%) of the present value of the cumulative accrued benefits under the Plan for all employees.   The accrued benefit of any employee other than a Key Employee shall be determined under the method which is used for accrual purposes for all plans of the Company, or, if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual rule of Section 411(b)(1)(C) of the Code.   For purposes of this definition, the following subsections shall apply.

(a)      Present Value of Cumulative Accrued Benefits.   If such plan is a Defined Contribution Plan, the present value of cumulative accrued benefits shall be deemed to be the market value of all employee accounts under the plan, other than voluntary deductible employee contributions.   If such plan is a Defined Benefit Plan, the present value of cumulative accrued benefits shall be the lump sum present value determined pursuant to actuarial assumptions adopted by the Employer for purposes of determining if this Plan is a Top Heavy Plan. Moreover, the present value of the cumulative accrued benefits shall be increased by the amount of all Plan distributions made with respect to an employee during the five (5) year period ending on the determination date, including distributions under a terminated plan which is a part of a Required Aggregation Group.

- 47 -

(b)     Determination Date.  A plan shall be considered a Top Heavy Plan for any Plan Year if, on the last day of the preceding Plan Year (the determination date), the above criteria were met.  For the first Plan Year that the Plan shall be in effect, the determination of whether said Plan is a Top Heavy Plan shall be made as of the last day of such Plan Year.

(c)     Top Heavy Group.  Each plan of the Employer required to be included in a Required Aggregation Group shall be treated as a Top Heavy Plan if such group is a top heavy group.

(d)     Inactive and Former Participants.  With respect to a Participant or former Participant who has not performed any service for the Employer at any time during the five (5) year period ending on the determination date, and with respect to a Participant or former Participant who was formerly a Key Employee, but who is not a Key Employee on the determination date, the present value of the cumulative accrued benefit for such Participant or former Participant shall not be taken into account for the purposes of determining whether this Plan is a Top Heavy Plan.

(i)     Interpretation of Definition.  This definition shall be interpreted consistent with Section 416 of the Code and rules and regulations issued thereunder.  Further, such law and regulations shall be controlling in all determinations under this definition inclusive of any provisions and requirements stated thereunder but herein above absent.

13.9    Key Employee.  The term "Key Employee" shall mean any employee, former employee or beneficiary thereof in an Internal Revenue Service qualified plan adopted by the Employer who at any time during the applicable Plan Year or any of the four (4) preceding Plan Years is defined in subsections (a) through (d) of this Section 13.9.

(a)     Officers.  An officer of the Employer having annual compensation during the Plan Year greater than fifty percent (50%) of the amount in effect under Section 415(b)(1)(A) of the Code for the calendar year in which such Plan Year ends.  For purposes of this Section 13.9(a), no more than fifty (50) employees, or if lesser, the greater of three (3) or ten percent (10%) of all employees of the Employers, shall be treated as officers;

(b)     Top Ten.  One (1) of the ten (10) employees having annual compensation from the Employer for a Plan Year of more than the limitation in effect under Section 415(c)(1)(A) of the Code for the calendar year in which such Plan Year ends and owning (or considered as owning within the meaning of Section 318 of the Code) both more than a one-half percent (½%) interest and the largest interests in an Employer;

(c)     5% Owners.  A five percent (5%) owner of an Employer; or

(d)     1% Owner.  A one percent (1%) owner of an Employer having annual compensation from the Employer for a Plan Year of more than one hundred and fifty thousand dollars ($150,000).

(e)     Compensation.  For purposes of this Section 13.9, compensation has the same meaning as under Section 415(c)(3) of the Code.

- 48 -

(f)     Interpretation of Definition.  This definition shall be interpreted consistent with Section 416 of the Code and rules and regulations issued thereunder.  Further, such law and regulations shall be controlling in all determinations under this definition, inclusive of any provisions and requirements stated thereunder but hereinabove absent.

13.10   Required Aggregation Group.   The term "Required Aggregation Group" shall mean (a) each plan of the Employer in which a Key Employee participates; (b) each other plan of the Employer which enables any plan in (a) to meet the requirements of Sections 401(a)(4) or 410 of the Code; and (c) each terminated plan maintained by the Employer within the five (5) year period ending on the determination date for the Plan Year in question which, but for the fact that it terminated, would meet the criteria of (a) or (b) preceding.

13.11   Permissive Aggregation Group.   The term "Permissive Aggregation Group" shall mean the Required Aggregation Group and any other plan or plans of the Company that are not required to be included in the Required Aggregation Group, but which, if treated as being part of such group, would not cause such group to fail to meet the requirements of Sections 401(a)(4) and 410 of the Code.

13.12   Modification of Top-Heavy Provisions.

(a)     Effective Date.   This Section shall apply for purposes of determining whether the Plan is a top-heavy plan under Section 416(g) of the Code for Plan Years beginning after December 31, 2001, and whether the Plan satisfies the minimum benefits requirements of Section 416(c) of the Code for such years.

(b)     Determination of Top-Heavy Status.

(i)     Key Employee.  Key employee means any Employee or former employee (including any deceased employee) who at any time during the Plan Year that includes the determination date was an officer of the Employer having annual compensation greater than $130,000 (as adjusted under Section 416(i)(1) of the Code), a 5-percent owner of the Employer, or a 1-percent owner of the Employer having annual compensation of more than $150,000.  For this purpose, annual compensation means compensation within the meaning of Section 415(c)(3) of the Code.  The determination of who is a Key Employee will be made in accordance with Section 416(i)(1) of the Code and the applicable regulations and other guidance of general applicability issued thereunder.

(ii)    Determination of Present Values and Amounts.   This Section 13.12(b)(i) shall apply for purposes of determining the present values of accrued benefits and the amounts of account balances of Employees as of the determination date.

(A)     Distributions During Year Ending on The Determination Date.   The present values of accrued benefits and the amounts of account balances of an Employee as of the determination date shall be increased by the distributions made with respect to the Employee under the Plan and any plan aggregated with the Plan under Section 416(g)(2) of the Code during the 1-year period ending on the determination date.  The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the plan under Section 416(g)(2)(A)(i) of the Code.  In the case of a

CH02/ 22456036.10

distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

(B)     Employees Not Performing Services During Year Ending On The Determination Date.  The accrued benefits and accounts of any individual who has not performed services for the Employer during the 1-year period ending on the determination date shall not be taken into account.

(c)     Minimum Benefits.  For purposes of satisfying the minimum benefit requirements of Section 416(c)(1) of the Code and the Plan, in determining years of service with the Employer, any service with the Employer shall be disregarded to the extent that such service occurs during a Plan Year when the plan benefits (within the meaning of Section 410(b) of the Code) no key employee or former key employee.

## ARTICLE XIV

## STATUTORY BENEFIT LIMITATIONS

14.1     Code Section 415 Limits.  The benefits otherwise payable to a Participant or a Beneficiary under this Plan and, where relevant, the Accrued Benefit of a Participant, shall be limited to the extent required, and only to the extent required, by the provisions of Section 415 of the Code and rulings, notices and regulations issued thereunder.   To the extent applicable, Section 415 of the Code and rulings, notices and regulations issued thereunder are hereby incorporated by reference into this Plan.

14.2     Special Limit on Twenty-five (25) Highest-Paid Employees.  The provision of this Section 14.2 shall apply to the twenty-five (25) highest-paid Highly Compensated Employees or Highly Compensated Former Employees for a Plan Year.  If a benefit becomes or is payable for a Plan Year to such an Employee, it cannot exceed an amount equal to the payments that would be made during the Plan Year on behalf of the Employee under a Life Annuity that is the Actuarial Equivalent of the sum of the Employee's Accrued Benefit and any other benefits under the Plan.

14.3     Exceptions to Special Limit.  The provisions of Section 14.2 shall not apply if: (a) benefits which would be payable to an Employee described in Section 14.2 are less than one percent of the total value of current liabilities before the distribution, or (b) the assets held in the Trust Fund equal or exceed, immediately after payment of a benefit to an Employee described in Section 14.2, 110% of the value of current liabilities.  For purposes of this Section 14.3, the value of current liabilities shall be as defined in Section 412(l)(7) of the Code.

14.4     Plan Termination Limit.  In the event of plan termination the benefit of any Highly Compensated Employee of Former Highly Compensated Employee shall be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

14.5     Highly Compensated Employee.  Highly Compensated Employees shall be determined in accordance with the following:

(a)     The term "Highly Compensated Employee" shall mean an Employee who:

- 50 -

(i)     during the Plan Year or preceding Plan Year was at any time a five percent (5%) owner of the Employer, or

(ii)    during the preceding Plan Year received compensation from the Employer in excess of eighty thousand dollars ($80,000) (or such higher amount as may be provided under Section 414(q)of the Code));

Provided, that an Employee shall satisfy the criteria of this Section 14.5(a)(ii) only if such Employee was in the top paid group of employees for the preceding Plan Year.  For purposes hereof, an Employee shall be considered a member of the "top paid group" for any year if such Employee is in the group consisting of the top twenty percent (20%) of the employees of the Employer when ranked on the basis of compensation paid during the year, pursuant to Section 414(q)(4) of the Code.

(b)     For purposes of determining Highly Compensated Employees, compensation shall mean compensation paid by the Employer for purposes of Section 415(c)(3) of the Code and shall include amounts redirected pursuant to Sections 125 (flexible benefit plans), 132(f) (transportation benefit plans) and 402(g)(3) (salary reduction) of the Code.

(c)     For purposes of determining the number of employees in the top twenty percent (20%) of employees, the following employees shall be excluded:

(i)     employees who have not completed six (6) months of service,

(ii)    employees who normally work fewer than seventeen and one-half (17½) hours per week,

(iii)   employees who normally work during not more than six (6) months during the Plan Year,

(iv)    employees who have not reached Attained Age twenty-one (21), and

(v)     employees included in a collective bargaining unit covered by an agreement with the Employer (to the extent permitted by regulations).

(d)     A former employee upon reemployment shall be treated as a Highly Compensated Employee if (i) such employee was a Highly Compensated Employee when he or she separated from service, or (ii) he or she was a Highly Compensated Employee at any time after reaching Attained Age fifty-five (55).

(e)     Highly Compensated Employees shall be determined on a Employer-wide basis rather than by Employer or by plan.

(f)     The determination of Highly Compensated Employees shall be governed by Section 414(q) of the Code and the regulations issued thereunder.

CH02/ 22456036.10

## ARTICLE XV

### MISCELLANEOUS

15.1    <u>Limitation on Distributions</u>.  Notwithstanding any provision of this Plan regarding payment to Beneficiaries or Participants, or any other person, the Company may withhold payment to any person if the Company determines that such payment may expose the Plan to conflicting claims for payment or to recoup any overpayment of benefits hereunder.   As a condition for any payments, the Company may require such consent, representations, releases, waivers or other information as it deems appropriate.  The Company may, in its discretion, comply with the terms of any judgment or other judicial decree, order, settlement or agreement including, but not limited to, a qualified domestic relations order, as defined in Section 414(p) of the Code.

15.2    <u>Limitation on Reversion of Contributions</u>.  Except as provided in subsection (a) through (c), Employer contributions made under the Plan will be held for the exclusive benefit of Participants and Beneficiaries and may not revert to the Employer.

(a)    <u>Mistake of Fact</u>.  A contribution made by the Employer under a mistake of fact may be returned to the Employer within one year after it is contributed to the Plan, to the extent that it exceeds the amount which would have been contributed, absent the mistake in fact.

(b)    <u>Deductibility</u>.  All contributions are conditioned upon their deductibility under Section 404 of the Code, and must be returned, to the extent the deduction is disallowed, to the Employer within one year after the disallowance.

Earnings attributable to amounts which may be returned to the Employer pursuant to this Section 15.2 may not be distributed, but, in the event that there are losses attributable to such amounts, the amount returned to the Employer shall be reduced by the amount of such losses.

15.3    <u>Voluntary Plan</u>.  The Plan is purely voluntary on the part of the Company and neither the establishment of the Plan nor any Plan amendment nor the creation of any fund or account, nor the payment of any benefits will be construed as giving any Employee or any person legal or equitable right against any Employer, the Company, or a Named Fiduciary unless specifically provided for in this Plan.  Such actions will not be construed as giving any Employee or Participant the right to be retained in the service of the Employer.  All Employees and/or Participants will remain subject to the discharge to the same extent as though this Plan had not been established.

15.4    <u>Inability to Receive Benefits</u>.  In making any distribution to or for the benefit of any minor or incompetent Beneficiary, or incompetent Participant, the Company may, but need not, direct that such distribution to a legal or natural guardian or other relation of such minor or court appointed committee of any incompetent, or to any adult with whom such person temporarily or permanently resides; and any such guardian, committee, relative or other person shall have full authority and discretion to expend such distribution for the use and benefit of such person; and the receipt of such guardian, committee, relation or other person shall be a complete

- 52 -

discharge to the Plan, without any responsibility on its part or on the part of the Pension Committee to see to the application thereof.

15.5   <u>Missing Persons, No Beneficiaries, and Closed Estates</u>.  Neither the Employers nor the Company shall be required to search for or locate a Participant, Spouse or Beneficiary. Each Participant, Spouse, and Beneficiary must file with the Company from time to time in writing the Participant's, Spouse's, or Beneficiary's post office address and each change of post office address.  Any communication, statement , or notice addressed to a Participant, Spouse, or Beneficiary at the last post office address filed with the Company, or if no address is filed with the Company, then in the case of a Participant, at the Participant's last post office address as shown on the Employer's records, shall be considered a notification for purposes of the Plan and shall be binding on the Participant and the Participant's, Spouse and Beneficiary for all purposes of the Plan.  If the Company notifies a Participant, Spouse, or Beneficiary of the provisions of this Subsection, and the Participant, Spouse, or Beneficiary fails to claim the Participant's, Spouse's, or Beneficiary's benefits or make such person's whereabouts known to the Company within three years after the notification, the Accrued Benefit of the Participant, Spouse, or Beneficiary may be disposed of, to the extent permitted by applicable law, by one or more of the following methods:

(a)   By retaining such benefits in the Plan.

(b)   By paying such benefits to a court of competent jurisdiction for judicial determination of the right thereto.

(c)   By forfeiting such benefits in accordance with procedures established by the Company.  If a Participant, Spouse, or Beneficiary is subsequently located, such benefits shall be restored, without interest, to the Participant, Spouse.

(d)   By any equitable manner permitted by law under rules adopted by the Company.

This Subsection also shall apply to an alternate payee under a qualified domestic relations order.

If a Participant or Beneficiary dies prior to receipt of a pension payment to which the Participant of Beneficiary is otherwise entitled under the Plan, the payment will be made in accordance with Section 8.6.

15.6   <u>Limitation of Third Party Rights</u>.  Nothing expressed or implied in the Plan is intended or will be construed to confer upon or give to any person, firm, or association other than the Employer, the Participants or Beneficiaries, and their successors in interest, any right, remedy, or claim under or by reason of this Plan except pursuant to a qualified domestic relations order, as defined in Section 414(p) of the Code.

15.7   <u>Severability</u>.  In case any provision of this Plan is held illegal or invalid for any reason, the illegality or invalidity will not affect the remaining parts of the Plan.  The Plan will be construed and enforced as if the illegal and invalid provisions had never been included.

- 53 -

15.8    One Plan.  This Plan may be executed in any number of counterparts, each of which will be deemed an original and the counterparts will constitute one and the same instrument and may be sufficiently evidenced by any one counterpart.

15.9    Use and Form of Words.  Whenever any words are used herein in the singular form, they will be construed as though they were also used in the plural form in all cases where the plural form would apply, and vice versa.

15.10    Headings.  Headings to sections, subsections and paragraphs are inserted solely for convenience and reference, and in the case of any conflict, the text, rather than the headings, shall control.

15.11    Governing Law.  The Plan will be governed by and construed according to the federal laws governing employee benefit plans qualified under the Code and ERISA and according to the laws of the State of Iowa where such laws are not in conflict with the federal laws.

15.12    Named Fiduciaries.  For purposes of Part 4 of Title I of ERISA, the Company, and those parties to whom any duties are allocated pursuant to Article IX of the Plan or the Trust Agreement, as such provisions may hereafter be amended, shall each be Named Fiduciaries.  All actions by Named Fiduciaries shall be in accordance with the terms of this Plan and of the Trust insofar as such documents are consistent with the provisions of Title I of ERISA.  Each Named Fiduciary while discharging his or her duties under this Plan shall act solely in the interest of Participants and Beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable administrative expenses.  Each Named Fiduciary shall discharge his or her duties hereunder with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

15.13    Allocation of Duties of Fiduciaries.  The Company shall be responsible for the administration and management of the Plan except for those duties specifically allocated to the Pension Committee or any of the Committee established pursuant to Article IX..  The Pension Committee shall have exclusive responsibility for the administration and the management and control of the assets of the Plan (but may, pursuant to the Plan and the Trust Agreement, delegate all or a portion of such responsibility).   The Pension Committee shall be deemed the administrator for purposes of ERISA.

15.14    Use of Electronic Media.  Any direction, notice or other communication provided to the Company or to any other party acting for the Plan which is stipulated to be in written form under the provisions of this Plan may also be provided in any medium which is permitted under applicable law or regulation.  Any written communication or disclosure to Participants required under the provisions of this Plan may be provided in any other medium (electronic, telephone or otherwise) that is permitted under applicable law or regulation.

CH02/ 22456036.10

## SCHEDULE A

### LIST OF NONQUALIFIED PLANS, PAYMENTS FROM WHICH ARE INCLUDED IN THE DEFINITION OF EARNINGS UNDER PLAN SECTION 1.38
(Effective January 1, 2007)

1.  AEGON USA, Inc. Employee Incentive Plan

2.  AEGON USA, Inc. Short Term Incentive Plan

3.  AFP Supplemental Bonus Plan for SOX Employees

4.  TCI Bonus Plans

5.  Transamerica Finance Corporation Retention & Incentive Compensation Plan (excluding Retention &    Home Run Bonus)

6.  Transamerica Investment Management, LLC Bonus Payment Plan

7.  Transamerica Investment Management, LLC Portfolio Management Incentive Compensation Plan

8.  Transamerica Reinsurance Sales Compensation Program

9.  Transamerica Reinsurance Variable Pay Plan

10. Transamerica Retirement Services Variable Pay Plan

CHAR2\752444_3
CH02/ 22456036.10

## SCHEDULE B

## PARTICIPATING EMPLOYERS

| Name | Participation Effective Date |
|---|---|
| AEGON Direct Marketing Services, Inc. | January 1, 2007 |
| AEGON USA Realty Advisors, Inc. | January 1, 2007 |
| Clark Consulting, Inc. | March 13, 2007 |
| Life Investors Insurance Company of America | January 1, 2007 |
| Monumental Life Insurance Company | January 1, 2007 |
| Premier Solutions Group, Inc. | January 1, 2007 |
| Stonebridge Life Insurance Company | January 1, 2007 |
| Transamerica Capital, Inc. | January 1, 2007 |
| Transamerica Financial Life Insurance Company | January 1, 2007 |
| Transamerica Investment Services, Inc. | January 1, 2007 |
| Transamerica Life Insurance Company | January 1, 2007 |
| Transamerica Occidental Life Insurance Company | January 1, 2007 |
| Western Reserve Life Assurance co. of Ohio | January 1, 2007 |
| World Financial Group, Inc. | January 1, 2007 |